## G. W. DALTON, Appellant, v. WILLIAM N. BARRON, JAMES J. BARRON and MOLLIE DUNKY.

### Division One, March 14, 1922.

1. **JUDGMENT LIEN: Property Fraudulently Conveyed.** The lien of a judgment extends to real estate of the judgment debtor which he has fraudulently conveyed to hinder or delay his creditors.

2. ———: ———: **Creditor's Bill: Exhausting Legal Remedies.** Where the judgment is a lien upon real estate fraudulently conveyed by the judgment debtor to hinder and delay his creditors, the judgment creditor may maintain a suit in equity to set aside such fraudulent conveyance and enforce the lien of his judgment against such real estate, without first having execution issued and such property sold thereunder. Nor is he compelled to have such execution issued, and to have other property of the judgment debtor sold thereunder before being entitled to maintain his suit in equity to set aside such fraudulent conveyance.

3. ———: ———: ———: ———: **Two Judgment Debtors.** A judgment creditor, having a judgment against two persons which is a lien upon the real estate of one of such judgment debtors fraudulently conveyed by him to hinder or delay his creditors, may maintain a suit in equity to set aside such fraudulent conveyance and to enforce his lien against such property so fraudulently conveyed, without exhausting his legal remedies against the property of the other judgment debtor.

4. ———: ———: ———: ———: **Appeal Bond.** A judgment creditor, whose judgment is a lien upon real estate of the judgment debtor fraudulently conveyed to hinder or delay his creditors, cannot be compelled to resort to an appeal bond to make his judgment,

Dalton v. Barron.

but may maintain a suit in equity to set aside such fraudulent conveyance and to enforce his lien against the property so fraudulently conveyed.

5. ———: ———: ———: ———: **Pleading: Stating Cause of Action: Case Adjudged.** One of the defendants made a lease of certain real estate to a Store Company for sixteen years at an agreed rental, covenanting that she had good right, etc. The company entered and expended large sums in improving the property. Thereafter an action of ejectment was brought against the company by one claiming a superior title, and the lessor at her request was admitted to defend on the ground that she was landlord, etc. The suit, after three trials in the circuit court and three appeals to the Supreme Court, resulted in a judgment for possession and damages against both defendants. The company lessee on the last appeal gave an appeal bond, upon which another of the defendants in this suit was surety, and to secure the surety made a note and deposited collateral with a bank of which such surety was a large owner. This surety was a lawyer and had represented the lessor in some matters connected with the litigation and had full knowledge of all the facts involved. Just before the third trial in the circuit court the lessor transferred to this lawyer and another all her property, including that involved in this suit, to hinder and delay her creditors and to prevent its being taken to pay any judgment rendered against her in the ejectment suit. After the affirmance of the last judgment in such ejectment suit, plaintiff, a large stockholder of the Store Company, lesee, bought and took an assignment of such judgm nt and, in order to save the collateral put up by the company to secure the sureties on the appeal bond, released the sureties on such bond, including the defendant lawyer. Plaintiff then began this suit to set aside such fraudulent transfer of her property by the lessor, setting up all the facts and charging full knowledge by defendants of the fraudulent purposes of the lessor and participation therein by them. *Held*, the petition stated a good cause of action, and the demurrer to it was improperly sustained.

Appeal from Butler Circuit Court.—*Hon. Almon Ing, Judge.*

REVERSED AND REMANDED.

*Sam M. Phillips, E. R. Lentz, Ed. L. Abington* and *Atkinson, Rombauer & Hill* for appellant.

(1)   The plaintiff before instituting the present suit to set aside the fraudulent conveyance from Mollie Dunky to Barron did not have to exhaust his legal remedies. Plaintiff would not be denied redress in a court of equity, simply because, if such be the fact, he had an adequate remedy at law against some party other than the defend- ant Dunky.   Simpson v. Smith, 196 Mo. App. 523;  Lime & Cement Co. v. Bank, 158 Mo. 272;  Lenox v. Earls, 185 S. W. 234;  Pocoke v. Peterson, 256 Mo. 501.   (2) The plaintiff had two remedies which he could pursue with reference to the property fraudulently conveyed from Mollie Dunky to the defendant Barron:   First, he could have had an execution issued and levied on this property, which is now in the name of the defendant Barron, and could have put the property up and sold it, and if he desired bought it in at the sale;  or, plaintiff could have pursued the method pursued in this case. Welch v. Mann, 193 Mo. 326;  Oldham v. Wade, 273 Mo. 231;  Spindle v. Hyde, 247 Mo. 32;  Nichols & Sheppard Co. v. Hubert, 150 Mo. 624;  Natl. Bank v. Coran, 109 Mo. 51;  Barrett v. Foote, 187 S. W. 67.   (3) There are two classes of creditor's bills (to which character of lit- igation the instant suit belongs):   one to reach the equitable assets or property of the debtor on which an execution at law cannot be levied;  and the other in aid of an execution at law, as to set aside an encumbrance or a transfer of property made to defraud creditors.   In the first class the creditor must allege and show that he has exhausted his remedy at law, while in the second it is sufficient to show that his claim has been reduced to judgment.   State Bank v. Belk, 94 N. W. 618;  Hodge v. Gray, 68 N. W. 979;  Newman v. Willets, 52 Ill. 101;  Bar- ber v. McMicking, 155 N. W. 387;  Wadsworth v. Schis- selbauer, 19 N. W. 390.   (4)  Defendant takes the posi- tion that the plaintiff cannot maintain this action against him for the reason that it has an adequate remedy at law against the Wright-Dalton-Bell-Anchor Store Company. It has been held repeatedly in this State that the fact that plaintiff may have a remedy by action at law against

a third person, as for instance on a bond, furnished no ground for refusing equitable relief. Lime & Cement Co. v. Bank, 158 Mo. 272; Roll v. Company, 52 Mo. App. 60; Simpson v. Smith, 196 Mo. App. 523; Kelly Co. v. Gail, 34 Mo. App. 94; Peters Shoe Co. v. Arnold, 82 Mo. App. 1; McDonald v. Hoover, 142 Mo. 484; Gentry v. Field, 143 Mo. 399. (5) To oust equity jurisdiction a remedy at law must be so complete that it obtains at present a full, complete and adequate remedy at law. Pocoke v. Peterson, 256 Mo. 503; Hanson v. Neal, 215 Mo. 256. Where it is doubtful whether relief can be had at law, equity will take jurisdiction. West v. Wayne, 3 Mo. 16; Barrington v. Ryan, 88 Mo. App. 85. (6) Defendant next contended in the trial court that the plaintiff has not pleaded the acts of fraud specifically enough; that is to say, that he has charged fraud in generalities and not specifically. The petition is not at all guilty of the charge thus preferred. (a) We charge specifically, and narrate the facts specifically, that the transfer of the property from Mollie Dunky to Barron was made after institution of the suit of Orchard v. Wright-Dalton-Bell-Anchor Store Co., and Mollie Dunky. The transfer of property so made after suit begun is a badge of fraud. Mason v. Perkins, 180 Mo. 702; McCullom v. Crain, 74 S. W. 650; 20 Cyc. 444, note 93. (b) It is also further alleged specifically that when Mollie Dunky made the transfer of the property described in plaintiff's petition to William N. Barron, she absolutely stripped herself of all property of all kinds which she owned, and that such fact was known to the defendant Barron. Such a transfer of all the property of the debtor is a badge of fraud. 20 Cyc. 449; Benne v. Schnecke, 100 Mo. 250; Segar v. Thomas, 107 Mo. 635; Jacob Co. v. May, 78 Mo. App. 323. (c) It is further alleged specifically that this property was worth at the time of the sale the sum of fifteen thousand dollars, and that it was sold for the sum of four thousand dollars, and that such sum was grossly inadequate. That inadequacy of consideration is a badge of fraud. Auction & Com. Co. v. Mason, 16 Mo. App. 473; Robards

v. Robards, 15 Mo. 459; Curd v. Lackland, 49 Mo. 454; Ames v. Gilmore, 59 Mo. 549; Ross v. Crusinger, 7 Mo. 259; 20 Cyc. 441; Knoop v. Kelsey, 121 Mo. 642; Assn. v. Steimke, 68 Mo. App. 52. (d) The petition charges that the sale to Barron of the property by Mollie Dunky was made secretly and was not advertised in the usual manner. All the facts concerning this transaction were specifically plead in the petition. Such secrecy or undue haste in the sale of property is a badge of fraud. Brewing Assn. v. Steimke, 68 Mo. App. 52; 20 Cyc. 447, 448. (e) The transfer of all or nearly all of a debtor's property, especialy when he is insolvent, or greatly embarrassed financially, is a badge of fraud. Ringtold v. Wagoner, 14 Ark. 69; Benne v. Schenecke, 100 Mo. 250; Grocery Co. v. May, 78 Mo. App. 323; 20 Cyc. 449; Bank of Hayti v. McElwain, 219 S. W. 75. (f) There is another badge of fraud alleged against the defendant Barron, and that is in one of the cases, the petition alleges that Barron had this deed made to William N. Barron and James J. Barron, when in truth and in fact there was no such a person as James J. Barron, but on the other hand, that he was a fictitious person. Unusual instances of this kind attending a transaction are a badge of fraud. (g) It is charged that Mollie Dunky made the deed in question with the fraudulent intent to cheat, hinder and delay her creditors, and that the defendant Barron took and accepted said deed with a knowledge of her intent, and that the intention on his part to aid and assist her in carrying out her fraudulent design. This makes the deed in question fraudulent and void as against creditors. Stewart v. Authorweite, 141 Mo. 562; Garesche v. McDonald, 103 Mo. 1; Stone v. Spencer, 77 Mo. 356; Shelley v. Boothe, 73 Mo. 74; Johnson v. Sullivan, 23 Mo. 474; Kurtz v. Troll, 86 Mo. App. 649; Christian v. Smith, 85 Mo. App. 117; Mercantile Co. v. Troll, 79 Mo. App. 558; Rubber Co. v. Bunn, 78 Mo. App. 55; Sellers v. Bailey, 29 Mo. App. 174; Clark v. Finn, 12 Mo. App. 583; Findley v. Findley, 93 Mo. 493.

*J. F. Woody* and *Arnot L. Sheppard* for respondent.

(1) ''Fraud must concur with damages to be actionable. Constructive or actual fraud without damages will not support a creditor's bill.'' Therefore, Mollie Dunky's purpose in executing these deeds and Barron's purpose in purchasing said property, are matters with which plaintiff has no concern unless he was damaged thereby. Johnson v. U. Rys., 247 Mo. 326; Thompson v. Newell, 118 Mo. App. 405; Stacey v. Robinson, 168 S. W. 264; Vlates v. Catsigianis, 202 S. W. 441. (2) Before resorting to equity, a creditor must exhaust his remedies at law. Col man v. Hagey, 252 Mo. 102; Merry v. Fremon, 44 Mo. 521; Mullen v. Hewitt, 103 Mo. 650; Mellier v. Bartlett, 106 Mo. 390, 391; Davidson v. Dockery, 179 Mo. 173; Humphrey v. Milling Co., 98 Mo. 552, 553; Brown v. McKown, 265 Mo. 320; Gill v. Newhouse, 178 S. W. 499; Littick v. Means, 195 S. W. 729; State ex. rel. Taafe v. Goggin, 191 Mo. 482; Steele v. Reid, 223 S. W. 885. (3) Where the judgment creditor has a legal remedy against others jointly bound with the grantor, he must first exhaust that remedy against the co-obligors, before bringing a bill in equity to set aisde a deed made by one of the joint debtors. Eiler v. Lacy, 137 Ind. 436; Stark v. Lamb, 167 Ind. 645; Mfg. Co. v. Lee, 33 Ind. App. 38; Riddick v. Parr, 11 Iowa, 733; Lovejoy v. Chapin, 115 N. Y. S. 949; Billhoefer v. Heubach, 15 Abb. Pr. 143; Field v. Chapman, 13 Abb. Pr. 326; Slatter v. Carroll, 2 Sandf. Ch. 580; Voorhees v. Howard, 4 Keyes 383; Reed v. Wheaton, 4 Paige, 633; Child v. Bruce, 4 Paige, 316; Burne v. Kunzmann, 19 Atl. (N. J.) 667; Randolph v. Daly, 16 N. J. Eq. 313; Wales v. Lawrence, 36 N. J. Eq. 207; Boice v. Conover, 54 N. J. Eq. 541; Lupton v. Lupton, 3 Cal. 120; 5 Ency. Pl. and Pr., 463, 495; 12 R. C. L. 637. (4) The assignee of a judgment creditor occupies identically the same position with respect to the judgment as his assignor, and takes no greater rights by reason of his purchase than were possessed by him from whom he purchased. Machinery Co. v. Ram-

lose, 210 Mo. 653, 654; Lionberger v. Baker, 14 Mo. App. 357; Archer v. Ins. Co., 43 Mo. 442; Bidwell v. Ins. Co., 40 Mo. 42; Bank v. Ruffin, 190 Mo. App. 135; Bobb v. Taylor, 56 Mo. 313; Hill v. McPherson, 15 Mo. 204; Calhoun v. Albin, 48 Mo. 304; Weaver v. Gray, 37 Ind. App. 35; Safe Dep. & Safe Co. v. Adams, 113 N. E. 277; 5 C. J. 978, 979; 37 Cyc. 380.

JAMES T. BLAIR, J.—Appellant is the assignee of a judgment against Mollie Dunky and the Wright-Dalton-Bell-Anchor Store Company and instituted this suit to set aside a conveyance which the petition alleges was made by Mrs. Dunky to her co-defendants for the purpose of hindering, delaying and defrauding creditors. A demurrer to the petition was filed and sustained. Appellant refused to plead further; judgment was rendered accordingly, and the case is here by appeal.

The petition alleges, in substance, that respondent William N. Barron is a lawyer, abstractor and real estate dealer and is familiar with titles, records and values of real estate in Butler County and particularly with reference to the parcel in question, which is described; that June 10, 1901, Mollie Dunky, then Mollie Knight, represented to The Wright-Dalton-Bell-Anchor Store Company that she had good right to lease to it a lot in Poplar Bluff, and that, "deceived thereby, the Store Company accepted from her a lease of the property in question and other property for a term of over sixteen years at an agreed rental of forty dollars per month;" that Mollie Knight, now Dunky, covenanted in the lease that she had good right, etc., and thereby became liable to the Store Company for any damages it might sustain in case of breach; that in reliance upon the warranties in the lease, the Store Company entered into possession and expended large sums in improving the lot, whereof respondents Barron had full knowledge; that in 1903 George Orchard commenced an action in ejectment against the Store Company for the lot in question, to recover possession and for damages and rents and pro-

fits; that in realization of her liability to the Store Company in case Orchard succeeded in his suit, Mrs. Dunky applied to be permitted to come in and defend in that suit on the ground that she was the landlord of the Store Company; that leave was given her and she answered; that the Orchard case was tried, judgment was rendered for defendants, and Orchard appealed; that in 1909 the judgment was reversed and the cause remanded for re- trial; that William N. Barron had full knowledge of the facts and of the opinion (225 Mo. 414), which appellant asks to have adopted as a part of the petition in this case; that the cause was retried and again resulted in a judgment for defendants, which, on appeal, was again (264 Mo. 554) reversed and the cause remanded; that of this opinion and the facts William N. Barron was fully cognizant; that they "are hereby adopted and asked to be taken and considered as a part of this peti- tion," etc.; that the liability of Mollie Dunky and the Store Company was fully settled and fixed by the de- cisions referred to, and that the sole issue left for de- termination was the amount which Orchard was en- titled to recover; that upon the return of the case after the second reversal, amendments suggested in the opinion were made and the cause was tried and a judgment was rendered for $7,477.17 and $78.60 monthly rental until restoration of possession, and for costs; that defend- ants in that case then appealed; that to prevent collec- tion of the judgment pending the appeal, the Store Com- pany gave an appeal bond in the sum of $15,000, and that William N. Barron, respondent in this case, was a surety thereon; that to secure Barron and other sureties against loss by reason of their suretyship, the Store Company executed and delivered to a bank, "of which said Barron is a large stockholder, director and dominat- ing spirit," its note for $10,000, with interest at two per cent per annum, and to secure payment thereof delivered to the bank collateral of the value of $16,962.97, "and that said Barron thus became a paid and secured surety on said bond with a full knowledge of all the facts here-

inbefore pleaded;'' that the Supreme Court, in April, 1917, affirmed the judgment in the Orchard case on the third appeal (197 S. W. 42; decided June 1, 1917; motion to transfer to Banc denied July 14, 1917); that on July 18, 1917, appellant, G. W. Dalton, purchased the judgment and it was assigned to him; that the recovery of the judgment referred to breached the covenants of the lease Mollie Dunky had made to the Store Company, and that she thereby became ''morally, legally and equitably bound'' to pay the judgment and protect the Store Company, which became liable to Orchard through no fault of its own, but through the misconduct and misrepresentation of Mollie Dunky, of all of which respondents in this case were advised; that while Orchard's suit was pending and undisposed of and after the liability of Mollie Dunky had become fixed ''to her knowledge and the knowledge of the defendants herein,'' on October 20, 1915, two days before the third trial was to begin, Mollie Dunky with intent to defraud her creditors, and particularly the plaintiffs and her co-defendant, the Store Company, in the suit referred to, conveyed the property involved by a deed in which William N. and James J. Barron were named as grantees, for a recited consideration of $2500; that this deed was executed by Mollie Dunky and her husband in Pittsburg, Pennsylvania, on the day named, and filed for record in Butler County, Missouri, on October 23, 1915; that William N. and James J. Barron had full knowledge of all the facts pleaded herein and of the fraudulent intent of Mollie Dunky, and accepted the deed with knowledge and with intent to aid and abet her in defrauding her creditors in the manner stated; that William N. Barron had represented Mollie Dunky, ''as attorney, at certain stages of said litigation between the said Orchard and the said Knight, now Dunky, and the said Store Company;'' that the consideration was not paid at the time of the sale, and that James J. Barron is either a fictitious person, as appellant believes, or is a non-resident of Missouri, and, in any event, paid no consideration for the deed; that if in fact

$2500 was paid, it is grossly inadequate as a considera-
tion for the property described in the deed and far below
its market value, which is alleged to have been in excess
of $10,000 at the time the deed was made; that no
publicity was given the sale or effort made to obtain
more than $2500, but that Mollie Dunky sold the lot hur-
riedly and secretly "with the full knowledge that judg-
ment would inevitably be rendered against her" in the
Orchard case, and so sold it with intent to defraud ap-
pellant and his assignors and the Store Company, and
that respondents Barron were fully aware of the facts
and aided and abetted Mollie Dunky in her efforts, and
accepted the deed with full knowledge of the facts and
"with intent to help her carry into execution her unlaw-
ful and fraudulent designs;" that Mollie Dunky was the
owner of another parcel of land in Poplar Bluff which
adjoined the lot involved in this case, and that at the
same time, for the same reason and with the same intent
she conveyed it to William N. Barron for a grossly in-
adequate price; that the two parcels were all the prop-
erty Mollie Dunky had, real or personal, in the State of
Missouri, and that respondents were advised of that
fact and knew that she was by the two deeds stripping
herself of all seizable property and rendering herself in-
solvent, and that she then intended immediately to leave
America, which she straightway did, and ever since has
resided in Switzerland; that it would be idle to issue
execution since Mollie Dunky is wholly insolvent and has
no property in Missouri unless that which she fraud-
ulently conveyed can be reached; that appellant has no
adequate remedy at law.

The petition then proceeds as follows:

"Plaintiff further states that he is now, and was at
all times hereinabove mentioned, president and one of
the principal stockholders, and as such one of the prin-
cipal owners of the aforementioned Wright-Dalton-Bell-
Anchor Store Company, and that as owner of said judg-
ment aforesaid and for the purpose of securing from
the possession of said Bank of Poplar Bluff, the colla-

teral notes given at the time for the purpose aforesaid, he did, on, to-wit, the 19th day of September, 1917, lawfully, legally and by proper legal and valid contract to that effect, attached to the margin of the record of said judgment aforesaid, release the sureties, and, among others, defendant William N. Barron, from liability on said fifteen thousand dollar appeal bond, given at the time, in the manner and for the purpose aforesaid, but plaintiff says that said Barron, notwithstanding such release, induced and procured said Bank of Poplar Bluff to refuse to deliver to plaintiff said collateral as aforesaid, and to retain the same in its possession until long after the institution of this suit, and plaintiff states that if he had attempted to collect his said judgment from the defendant William N. Barron as surety as aforesaid, and the other sureties on said appeal bond, and if he had succeeded, in said attempt, then and in that event that said sureties, William N. Barron and others, would thereupon have confiscated said collateral deposited as aforesaid with said Bank of Poplar Bluff, and which act on their part would have resulted in great and serious financial loss to plaintiff as president, principal stockholder and part owner of said Wright-Dalton-Bell-Anchor Store Company; plaintiff further says that if he had caused execution to be levied upon the property of, and had collected said judgment from, the Wright-Dalton-Bell-Anchor Store Company, or if he in the future should collect said judgment from said Wright-Dalton-Bell-Anchor Store Company, such act on his part would have resulted, or in the future will result, in great financial loss to him as president, principal stockholder and part owner of said Wright-Dalton-Bell-Anchor Store Company; plaintiff further says that the collecting of said judgment from the Wright-Dalton-Bell-Anchor Store Company and permitting said Mollie Dunky to escape and avoid the paying of a debt solely and justly hers, by fraudulently stripping herself of all her property with defendant Barron's aid, in the manner and by the means aforesaid, would be inequitable, unconscionable and unjust.

"Plaintiff says that the defendants, James J. Barron and Mollie Dunky, are non-residents of the State of Missouri, and that the ordinary process of law cannot be served upon them.

"Wherefore, plaintiff prays that an order of publication be made notifying the defendants, James J. Barron and Mollie Dunky, of the pendency of this suit, as provided by statute, in such cases made and provided, and that the said conveyances be adjudged fraudulent and void against plaintiff; that the same be set aside and for naught held and that the property herein mentioned be sold for the satisfaction of the said judgment of plaintiff, and that the defendants be in the meantime enjoined and restrained from disposing of the said property or paying out any of the profits thereof and in anywise interfering therewith; and the defendants Barron be required to account for all rents and profits of every kind which they have received from or by virtue of their dealings with the said property; and if the court thinks it equitable so to do, plaintiff hereby tenders to defendants and offers to repay to them as a consideration precedent to recovering judgment for plaintiff herein, such amount, if any, as they paid to the said Mollie Dunky for the said land, together with legal interest from the date of said purchase, if any, and for such other and further relief as to the court may seem just and proper, and as in duty bound your petitioner will ever pray."

The petition is necessarily long, but what is set out is sufficient for the decision of the questions which counsel discuss. The demurrer is sufficient in form and substance to present those questions. Appellant discusses the points made by respondents on the trial. Respondents confine themselves to the same questions, in substance. We shall assume counsel raise all the questions the record presents, and refrain from searching this long petition for defects other than those respondents' counsel, in their able brief, present as covering the case. In epitomizing the petition in part this course was held in view.

I. We do not understand respondents to deny that the allegations of the petition are sufficient to show that appellant is the assignee of a valid judgment against Mrs. Dunky and the Store Company, and that Mrs. Dunky had, with intent to defraud her creditors, including appellant, and to prevent collection of the judgment or any part of it from her, conveyed all her property to respondents for a wholly inadequate consideration, whereby she stripped herself of all property in Missouri and rendered herself insolvent so far as the collection of a debt against her here is concerned, and then left the United States; nor to deny that it is sufficiently alleged that respondents took with full knowledge of the fraud and took with the intent to aid and abet the fraud attempted by Mrs. Dunky, Their position, on the contrary, is that appellant had other sources of payment and cannot complain for that reason.

**Sufficient Petition.**

II. In the circumstances it could not be denied that if Mollie Dunky had been the only judgment debtor, appellant could have maintained a suit against her and her fraudulent grantee to set aside the conveyance now in question and subject the property to the payment of his judgment. This much respondents' brief by necessary implication concedes the demurrer to admit.

**Fraud by Single Judgment Debtor.**

III. It is earnestly argued that a creditor must exhaust his legal remedies before he will be heard in equity, and that this principle so applies to a judgment creditor who comes into equity to set aside a fraudulent conveyance which obstructs the enforcement of his lien as to deny him relief (1) until he has shown, either by *nulla bona* return or other adequate evidence, that his debtor has no other property out of which the debt can be made; and (2), in case there is more than one judgment debtor, until he has shown the debt is not collectible from any of them.

**Exhausting Legal Remedies.**

It is also contended that in this case resort should have been had to the appeal bond and the collateral securing the sureties thereon.

(1.)    There is some apparent confusion in the decisions, here and elsewhere, but an examination of them shows that the disharmony is not so great as at first blush might appear.

It is universally held that creditors' bills, brought by judgment creditors to discover concealed assets or to reach property not subject to execution, cannot be maintained until legal remedies have been exhausted. The very ground of jurisdiction in such proceedings is that the property sought to be subjected to the

**Removing Fraudulent Conveyance.**  payment of the judgments cannot be reached by legal process.  The decisions holding this principle obviously do not decide the question in this case.  In this case appellant, a judgment creditor, seeks to remove an admittedly fraudulent conveyance which constitutes an obstruction to his realization of his judgment out of the fraudulently conveyed property. Such a proceeding by such a creditor is in aid of his legal process.  There are decisions to the effect that an execution must in such cases be issued and levied or at least issued before equity will take jurisdiction.  It will be found that most of these are in cases in which the creditor's judgment did not give a lien until the required further step was taken.  These cases are not in point in this case.  It is not denied that the judgment here constitutes a lien upon the property fraudulently conveyed. [Slattery v. Jones, 96 Mo. 216.]  In such a situation the judgment creditor has a right to enforce his lien against any property of his debtor and may levy his execution upon property fraudulently conveyed and sell it in the usual way.  In case of such sale the purchaser, whether the creditor or another, can sue to set aside the fraudulent conveyance, and no case holds he could be defeated because he did not first levy upon and sell property of the debtor other than that fraudulently conveyed.  The

293 Mo.—4

creditor is not, however, compelled to levy and sell in the first instance. Appellant, if nothing else appeared, had the right first to institute this proceeding to set aside the fraudulent conveyance and remove it as an obstacle to securing a fair price at a subsequent sale. This court so held long ago, and has repeatedly urged upon the bar the course, in this respect, which appellant followed, rather than a sale under execution and a subsequent suit to set aside the conveyance alleged to be fraudulent. [Zoll v. Soper, 75 Mo. l. c. 462; Ice & Cold Storage Co. v. Kuhlman, 238 Mo. l. c. 704; Bobb v. Woodward, 50 Mo. l. c. 102; Welch v. Mann, 193 Mo. l. c. 326; Spindle v. Hyde, 247 Mo. l. c. 52, 53; Lionberger v. Baker, 88 Mo. l. c. 455, 456; Barrett v. Foote, 187 S. W. (Mo.) l. c. 70, 71; Davidson v. Dockery, 179 Mo. l. c. 696; Oldham v. Wade, 273 Mo. l. c. 250, 251.] Some of these cases expressly decide that no *nulla bona* return is required as a condition precedent to the maintenance of such a suit, and the same decision is necessarily implicated in the rest regardless of the language used. The effect of these decisions is that the damage to the plaintiff is done when a fraudulent obstacle is interposed to his free enforcement of his lien. [Bump on Fraudulent Conveyances (4 Ed.) sec. 528.] The judgment lien given by our statute extends to property fraudulently conveyed. [Slattery v. Jones, supra.] At the moment a judgment lien attaches it does so without regard to any question whether part of the property it affects has been fraudulently conveyed or has not been so conveyed. The judgment creditor has full right to issue and levy his execution upon any of such property he may choose, and to sell the one or the other, if either will satisfy his judgment. If it be true that legal remedies, in the sense in which counsel use the term, must be exhausted in such a case before a judgment creditor can sue to set aside a fraudulent conveyance, then it would be always necessary to have a return *nulla bona* or other adequate evidence that the judgment debtor had no property subject to execution. But property fraudulently conveyed is subject to levy like any other

property of the debtor. It would follow that no suit ever could be brought to set aside a fraudulent conveyance in advance of sale, since, if respondents are right, it would be necessary to jurisdiction of such a suit that all leviable property be first seized under the execution and sold— and this would always include all property, whether previously fraudulently conveyed or not. The result of the argument would be that until the creditor had sold the fraudulently conveyed property under execution he would not have exhausted his legal remedies and equity would not hear him to remove the fraudulent obstruction to legal process, and, therefore, could never hear him for that purpose. This is obviously a conclusion which must be reached if the argument, as made, is valid, and just as obviously one which is denied by every decision permitting a judgment creditor to sue in advance of a sale.

It may be said that the real position is that equity will refuse jurisdiction until the creditor has exhausted his rights against property other than that fraudulently conveyed. As already pointed out, the judgment lien makes no distinction of that kind. The officer who makes a *nulla bona* return when there is leviable property he might seize does so at his peril. And this applies when the judgment is a lien on property fraudulently conveyed. The matter comes to this: Will courts of equity say to a creditor in a suit like this, you must resort to other property of the debtor if he has any; if he has and it is sufficient you must make your money out of it; if he has none or not enough, you need not levy upon the property fraudulently conveyed, but in such circumstances equity will take jurisdiction to remove the fraudulent obstacle interposed to a sale for a fair price? If this is the law, then the rule permits admittedly fraudulent grantors and grantees to choose what property subject to execution shall be seized and sold by a judgment creditor. He may not, after all, enforce his lien, as he may choose. He must submit to the will of the debtor and his grantee with respect to the property to be sold, though that will secures its ends by fraud. If this is the law, the result

will be that the creditor will levy and sell in the first place, and the earnest insistence of this court that the method pursued in this case is the preferable one will necessarily be brought to naught. The exhaustion of legal remedies, rule, does not apply in a case like this to the extent for which respondents contend. There is ample authority for this conclusion. This court expressly so held in Patton v. Bragg, 113 Mo. 601: "The fact that Lycurgus Bragg had an interest in his father's lands upon which plaintiff's judgments were liens, is no defense to this action. If, as this evidence tends to show, he was the owner of this tract conveyed to his wife, the judgments were also liens upon that, and plaintiff might have levied upon either, and it is not for defendants to question his right or dictate terms, under the pleadings in this case and the facts shown. The maxim of a complete remedy at law has no application here." The decision is in point and is in accord with reason and the weight of authority. When a fraudulent conveyance is an obstruction to the enforcement of a valid lien equity will remove it, and the fraudulent grantor and grantee have no standing to whittle down the lien by interposing the fraudulent conveyance between the lienor and his collection of the judgment out of any property the lien affects. "If the grantee's title is tainted with fraud, he has no right to say that all other means to satisfy the debt shall be exhausted before he shall be disturbed," and equity will not hear him when he undertakes to say it. [State Bank of Ceresco v. Belk, 68 Neb. 517; Hodge v. Gray, 110 Mich. 654; Weightman v. Hatch, 17 Ill. 281; Vasser v. Henderson, 40 Miss. 519; Newman v. Willetts, 52 Ill. l. c. 101; Wadsworth v. Schisselbauer, 32 Minn. 84; Ladd v. Judson, 174 Ill. 344.] In the note to this case in 66 Am. St. l. c. 287, numerous decisions are found which announce the same doctrine. In Botsford v. Beers, 11 Conn. l. c. 375, the court said:

"And we are yet to learn that it is any defense, either in law or chancery, that there are other lands which might have been taken; and that the debtor is not in-

solvent. All this may be very proper evidence to show that the conveyance was not fraudulent. But upon what principle it is that these facts can be set up, by a fraudulent grantee to protect a conveyance admitted to be fraudulent, we are at a loss to discover."

In Spooner v. Ins. Co., 76 Minn. l. c. 316, 317, 77 Am. St. l. c. 651, 655, the same doctrine is announced and many decisions cited. In 23 L. R. A. (N. S.) 1 et seq. will be found a collection of the cases and an analysis of them. Mr. Bump in his work on Fraudulent Conveyances (4 Ed.) says:

"Sec. 532. *Bill in Equity.* The remedy most frequently used is a bill in equity, because a court of equity sifts the consciences of the parties and removes the cloud from the title. Fraud constitutes the most ancient foundation of its jurisdiction, and is a sufficient ground for its interposition. It may grant relief although there is ample remedy at law, for no relief is adequate except that which removes the fraudulent title. The relief in equity is different and may be more beneficial than that given by the law. But jurisdiction is not assumed upon the ground either that the subject is appropriate to a court of equity as a court of peculiar jurisdiction, or because that court proceeds upon an interpretation of the statute distinct and different from that given at law. On the contrary, it is entertained in equity notwithstanding it exists at law, and thus entertained because such deceitful practices, dishonest in their concoction, progress and consummation, are so abhorrent to every tribunal of justice, that every tribunal has authority and is bound to relieve against them according to its respective capacities and methods of proceeding, and because the relief peculiar to a court of equity is more nearly perfect than that afforded at law."

Numerous decisions are collected in a note. The same rule is laid down in 2 Moore on Fraudulent Conveyances, sec. 31, l. c. 771. Respondents cite Missouri decisions which they contend decide the contrary. In Coleman v. Hagey, 252 Mo. 102, the question involved

was what remedies a trustee in bankruptcy might have respecting property fraudulently conveyed by the bankrupt, and the inability of a creditor to maintain a creditor's bill before judgment was discussed. It was held he could not do so and that he could not proceed after judgment to subject property not subject to execution to the payment of his debt without having exhausted all legal remedies. This is the general rule here and elsewhere, and a careful reading of this opinion shows it decided nothing out of harmony with it. In Implement Co. v. Jones, 143 Mo. l. c. 278, no judgment had been obtained and, therefore, no judgment lien existed. It was held this would make the bill bad except for the statute which permitted an attaching creditor to sue. The case is not in point. In Merry v. Fremon, 44 Mo. 518, it will be found that the court conceded the correctness of the contention that the judgment in that case no longer was a lien and treated the case from that point of view. In Mullen v. Hewitt, 103 Mo. 639, it was held that the expiration of ten years after judgment without revivor rendered the judgment dormant and excluded the possibility of a lien or issuance of execution without a previous suit on the judgment and thereby put the creditor at large. In Mellier v. Bartlett, 106 Mo. l. c. 390, 391, the Mullen decision was reaffirmed. In Davidson v. Dockery, 179 Mo. l. c. 693 et seq., plaintiff was a mere general creditor. No judgment had been obtained and no other lien was shown. The case was wholly unlike this. In Humphreys v. Milling Co., 98 Mo. 542, plaintiff's demand was an open account. What was said in that case had reference to this fact. In State ex rel. v. Goggin, 191 Mo. 482, there was no judgment effective against the fraudulent grantor, and no other lien. In Brown v. McKeown, 265 Mo. 320, the question in this case was not involved. In that case there was no judgment, and a proceeding by attachment was relied upon as the basis of the right to sue to set aside a fraudulent conveyance. The holding was that an attachment of the kind sued out in that case did not entitle the attachment plaintiff

to sue under the attachment statute, as she attempted to do. In Gill v. Newhouse, 178 S. W. l. c. 499, 500, it is held that a creditor suing to set aside a fraudulent conveyance had alleged facts which showed he had no remedy at law. The question decided was whether an express allegation to that effect was essential or whether allegations of facts showing it would suffice. The question in this case was not examined. In Littick v. Means, 195 S. W. l. c. 730, the phrase concerning exhaustion of remedies at law was used in connection with a holding that a judgment creditor may sue to set aside a conveyance without first selling under execution. In Steele v. Reid, 284 Mo. 269, one question discussed was whether the issuance of an execution was essential to the maintenance of a suit by a judgment creditor to set aside a fraudulent conveyance. It was said that the issuance of an execution was usually necessary as a part of the process of exhausting legal remedies. The cases in this and other states holding the contrary are not referred to. The case of Merry v. Fremon, supra, was cited. It did not involve an existing judgment lien, as the court treated it. Turner v. Adams, 46 Mo. l. c. 99, was also cited. That decision is based on Merry v. Fremon, which has been considered; McDowell v. Cochran, 11 Ill. l. c. 33, in which the creditor sought to reach in equity property not subject to execution, which distinguishes the case; M'Dermutt v. Strong, 4 John. Ch. l. c. 690, which is like the McDowell Case and distinguished for the same reason; Postlewait v. Howes, 3 Clark (Iowa) 365, which was a creditor's bill to reach certain real estate alleged to be held by defendant for the estate of a deceased debtor. The same court, in an opinion by the same judge, in Loving v. Pairo, 10 Iowa, l. c. 289, held that the exhaustion of legal remedies to the extent of securing a *nulla bona* return was not essential to the maintenance of a suit to set aside a fraudulent conveyance when the creditor had a judgment lien. Later Iowa cases are not entirely consistent. [Peterson v. Gittings, 107 Iowa, l. c. 310, 311; Banning v. Purinton, 105 Iowa, l. c. 644, 645; Drahos v. Kopesky, 132 Iowa, l.

c. 498, 499.] The citation in Steele. v. Reid of 5 Ency. Pl. & Pr. is of a paragraph having reference to creditors' bills brought by general creditors and not referring to creditors who have liens and sue to set aside a conveyance which impedes their remedy by execution. The latter question is discussed in 5 Pl. & Pr. l. c. 498 et seq.

The authorities cited, therefore, when examined, do not appear to support the proposition advanced. Further, in the Steele Case the question was not vital, and it was not, as the opinion shows, presented in such a way as to require an investigation of the basis of the rule. In that case it was seen the same holding was required whatever view was taken on this question. In this case the same thing would be true if Mollie Dunky were the only judgment debtor. She is not. Questions raised depend upon that fact and make this discussion relevant to the issues.

(2) It is earnestly contended that before this suit could be maintained it was necessary for appellant to show an exhaustion of legal remedies against the other judgment debtor's property. If the doctrine of Patton v. Bragg, supra, and the other decisions cited, reviewed and approved in the preceding paragraph (1) is correct, and we hold it is, then the same principle applies to the present contention. If appellant might maintain this suit, in case Mollie Dunky had been the sole judgment debtor, without resorting first by execution to other property, if she had it, that rule does not depend upon the fact that there is but one judgment debtor. It rests upon the principle that the acquisition of the lien entitled the judgment creditor to remove fraudulent obstacles in the path of his right to a sale under execution, for a fair price, of any property subject to the lien. If there be more than one judgment debtor the same principle entitles the judgment creditor to pursue any property, of any or all of them, which the lien affects without regard to the ownership of it by this or that defendant. The

**Two Judgment Debtors.**

thing which equity does is to restore the creditor to the position he would be in except for the fraud, i. e. with an unobstructed lien upon all property the law makes subject to such lien. This is precisely the principle in Patton v. Bragg and other cases already cited. In cases of this kind under statutes like ours, in so far as the question being considered is concerned, that principle is applied. In Dawson v. Bank, 228 Ill. 1. c. 580, in response to a like contention the court said:

"Defendant in error had a right to proceed against the property of either one or both of the judgment debtors, but neither of said judgment debtors had the right to require it to proceed against the property of the other. The conveyance by Dawson to his wife of all the property he owned, without any valuable consideration, was a fraud upon defendant in error, and for that reason did not devest Dawson of the equitable title to the land. It was still subject to the payment of defendant in error's judgment, and under the authorities above cited, and many more to be found in our reports, defendant in error was not obliged to proceed against Boatmen before it was authorized to file its bill for the relief prayed in this case."

Davelaar v. Blue Mound Inv. Co., 110 Wis. 1. c. 474, was a creditor's bill to reach assets of one of two judgment debtors not subject to execution. It was conceded, in accordance with the general rule, that as against the debtor sued a bill of that kind could not be maintained until his property subject to execution had been exhausted. To the argument that the plaintiff must fail because he did not show that the other judgment debtor had no property subject to execution, the court responded:

"The proposition that the creditor must exhaust his legal remedies before he can institute proceedings to sequester the property of a corporation and secure the appointment of a receiver is admitted. [Hinchley v. Pfister, 83 Wis. 64.] But, as between the judgment debtors and the plaintiff, each is bound to pay the whole debt; and it is no ground of complaint that the creditor

may see fit to collect the debt out of the property of one, and not out of that of the other. [Hyde v. Rogers, 59 Wis. 154.]"

The same principle was applied in Hodge v. Gray, 110 Mich. l. c. 655 and cases there cited. In Strong v. Lawrence, 58 Iowa, l. c. 61, it is said:

"Section 2550 of the Code abolishes all distinction between joint and several liabilities, and authorizes an action to be brought against anyone of several parties to a joint obligation. . . . The plaintiff might, therefore, have sued Alexander Lawrence, without making John Lawrence a party, and if he could have proceeded in that manner, it follows, we think, that he may uncover the property of Alexander Lawrence without proving the insolvency of John Lawrence."

A helpful discussion of the matter and a like conclusion are found in Vasser v. Henderson, 40 Miss. l. c. 520, 521. In Tuthill v. Goss, 35 N. Y. Supp. 136, and Clarkson v. Dunning, 4 N. Y. Supp. 430, it is held that if the debtors are jointly and severally bound the rule as to joint debtors does not apply. [Bray's Admr. v. Seligman's Admr., 75 Mo. l. c. 40, 41.]

The cases relied on by respondents usually involve judgments rendered against debtors bound by joint obligation. [Eller v. Lacy, 137 Ind. l. c. 437, 439; Baker v. Potts, 73 App. Div. l. c. 32.] In others property of other debtors amply sufficient to pay the whole debt had been already levied upon and seized under execution. [Wales v. Lawrence, 36 N. J. Eq. l. c. 208, 209.] In others the effort was to reach property not subject to execution except after equitable relief. [Kyle v. Frost, 29 Ind. 382.] Others are from the few courts which do not yet recognize the first principle above discussed, or in which a *nulla bona* return is required by statute.

From this it follows that under the law in this State and most of the others it was not necessary to show the insolvency of the Store Company or proceed against its property before suing to disencumber the lien upon the property fraudulently conveyed.

IV.   That a judgment creditor might recover on a bond, if he chose to proceed that way, does not prevent his proceeding in equity when he has an equitable right he is entitled to enforce.   [Lime & Cement Co. v. Bank, 158 Mo. 1. c. 280.]   Nor can a judgment creditor be compelled to resort to a fund deposited in court in lieu of appeal bond.   [Spear v. Johnson, 111 Minn. 74.] · The court in that case said:

Other Remedies.

"While it is true that defendant could have satisfied his judgment by resort to that fund, we cannot hold that he was required to do so.   His judgment was valid, and, not having been paid, he had the undoubted option for its collection by any method permitted by law."

It is also held that a judgment creditor who has acquired a legal lien on property and sues to remove a fraudulent conveyance which obstructs the fair enforcement of the lien, has the right to maintain such a suit without regard to whether there is other property out of which he might realize his debt.   "He has the right to be placed in the same position as he would have occupied if the fraudulent transfer had never been made," and he cannot be denied such relief because he has taken collateral security, and may enforce his judgment out of any unexempt property unless it is shown it would be inequitable to permit this course.   [Spooner v. Ins. Co., supra, 1. c. 317, 318.]

The situation in this case, in so far as the appeal bond and collateral are concerned, is peculiar.   The Store Company and Mrs. Dunky were both liable under appellant's judgment.   He had the right to make his money out of the property of either or both of them.   As against him neither could, under ordinary circumstances, set up any equity possessed against the other.   As between themselves the case was different.   Mrs. Dunky was the landlord and was liable to the Store Company for damages for the breach of the covenants of her lease, as the petition charges and the demurrer admits.   In a sense she was primarily liable.   In such circumstances payment

of the Orchard judgment by the Store Company would have entitled it to judgment against her in a proper action. The appeal bond was made by the Store Company; and the collateral put up to secure the sureties on that bond, among them one of respondents, was its property. In this situation respondents fraudulently aided Mrs. Dunky to rid herself of all her property, with knowledge that she was about to leave the country for residence elsewhere. The property fraudulently conveyed would have furnished a fund out of which the Store Company could have recouped itself in the usual way by ordinary legal process if the conveyance had not been made. If appellant is to be compelled to resort to the appeal bond or the collateral put up with it, then he is compelled to collect from the Store Company, and it must pay and either lose its damages or resort to the same property which appellant seeks to subject to his judgment by this proceeding. There is respectable authority for the proposition that the general doctrine of marshaling, to the effect that both funds must belong to the same debtor, is subject to the exception that where independent equities exist which call for payment by one debtor to the exoneration of the other, the fund of the principal debtor will first be subjected. The cases are collected in 26 Cyc. pp. 932, 933, and in a note to Carter v. Leather Co., 196 Mass. 163, in 12 L. R. A. (N. S.) p. 965 et seq. It is not necessary to hold that the Store Company could have compelled appellant to resort to the property of Mrs. Dunky. The question is, when he has resorted to it, whether equity will permit the fraudulent grantee of Mrs. Dunky, in the circumstances of this case, to compel appellant to turn to the property of another debtor with respect to whom, as between themselves, Mrs. Dunky is primarily liable. Whether equity would so marshal the assets is one question. Whether it will prevent the appellant from voluntarily marshaling them in accordance with good conscience is another. Even if appellant might effectually resist an effort to compel such a course on his part, yet he has waived any

objection he might make and seeks first to subject the property of the debtor primarily liable. We hold the fraudulent grantee has no standing to require the debtor to ignore the equities between the judgment debtors.

If it be said the Store Company could pay and then attach and set aside the conveyance, what reason can be assigned in equity for denying the right of appellant to proceed, as he is doing, to accomplish the same thing on his own right? The demurrer admits too much to permit this contention of respondents to withstand examination. [Baker v. Potts, 73 App. Div. 1. c. 32.]

As the case is now presented we think the evidence should be heard. The judgment is reversed and the cause remanded. All concur; *Elder, J.,* in result.