No. 28,756.

THE FEDERAL LAND BANK OF WICHITA, *Appellee*, v. C. FRANK TAWZER et al., *Appellants;* CHARLES W. JOHNSON, Receiver of the First State Bank of Minneola, and L. F. HENRY, *Appellees*.

(281 Pac. 904.)

Opinion filed November 9, 1929.

*J. B. Hayes*, of Ashland, and *John W. Davis*, of Greensburg, for the appellants.

*H. R. Daigh*, of Ashland, and *Lane A. Dutton*, of Dodge City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from the findings and judgment of the court that a certain deed had been executed without consideration and in fraud of creditors, and subjecting the property of the grantor of the deed to the payment of his debts.

C. Frank Tawzer resided at Minneola, Kan. He owned a quarter section of land near there which was mortgaged to the Federal Land Bank for $4,000. He was indebted to the First State Bank of Minneola on two notes. The bank failed and Charles W. Johnson became the receiver for it. On August 31, 1925, the receiver for the bank brought suit against C. Frank Tawzer on these notes, and on November 16, 1927, recovered judgments thereon aggregating

$5,613.16. These judgments were rendered at the September, 1927, term of the court which began September 26, 1927. On September 23, 1927, C. Frank Tawzer executed to his brother, H. L. Tawzer, for a recited consideration of one dollar, a quitclaim deed to his quarter section of land near Minneola. This deed was recorded September 24, 1927. Neither the receiver of the bank nor his counsel had actual knowledge of this deed until the day judgment was taken against Tawzer, November 16, 1927. On November 26, 1927, the Federal Land Bank brought an action to foreclose its mortgage on the Tawzer land. C. Frank Tawzer answered, admitting the execution of the note and mortgage sued on, alleged that he had conveyed the property to H. L. Tawzer, who had agreed to assume and pay the indebtedness, prayed the court to foreclose the mortgage as the property of H. L. Tawzer, and to dismiss him as having no title or interest therein. H. L. Tawzer answered, admitting the indebtedness and mortgage and that he had assumed the indebtedness, and asked that the land be sold and that he be given the period of redemption. The receiver of the First State Bank answered, and by an intervening cross petition set up its judgments against C. Frank Tawzer and alleged that the deed given by C. Frank Tawzer to H. L. Tawzer was without consideration and that it was executed for the purpose of hindering, delaying and defrauding the creditors of C. Frank Tawzer, and especially the receiver of the First State Bank; alleged that the real property was of the reasonable value of $8,000, and that C. Frank Tawzer was insolvent and had no other property, either real or personal, upon which levy could be made to satisfy the judgment; prayed that the deed be canceled, that C. Frank Tawzer be decreed to be the owner of the property, and the same be subjected to the payment of the sum due the receiver. These allegations were put in issue by appropriate pleadings. There was a trial to the court. The court found that the deed in question was given without consideration and for the purpose of hindering, delaying and defrauding the First State Bank in the collection of the judgments rendered against C. Frank Tawzer; that the real property at the time the deed was executed was of the reasonable market value of $6,000 and was encumbered by a mortgage of $4,000; that C. Frank Tawzer had no other property on which levy could be made to satisfy the judgment, and is insolvent, and has been at all the times mentioned in the findings; that H. L. Tawzer knew at all times the financial condition of his brother, C. Frank Tawzer, and knew of the pendency of the suits

of the First State Bank against him, and conspired with his brother and accepted the quitclaim deed for the purpose of hindering, delaying and defrauding the First State Bank in the collection of the judgment, and placing the real estate beyond the reach of creditors. The judgment of the court was that the bank had a lien upon the property to the amount of its judgments against C. Frank Tawzer which was second to the lien of the Federal Land Bank, and decreed that the property be sold to satisfy the liens. Upon these findings and judgments C. Frank Tawzer and H. L. Tawzer have appealed.

Appellants contend that the receiver of the First State Bank was not entitled to relief sought and obtained, for the reason that he had not exhausted his remedy at law by having issued execution upon the judgments obtained against C. Frank Tawzer November 16, 1927, before he filed his cross petition in the nature of a creditor's bill in the present foreclosure action. This question was raised by a demurrer to the petition and by various other motions and objections throughout the trial. The point is not well taken. The general rule is that before a creditor can resort to equity by an action in the nature of a creditor's suit he should reduce his claim to judgment. (15 C. J. 1388.) The reason for this is that until his claim is reduced to judgment it cannot be determined that he has a valid claim. But we need not pursue that thought further in this case, for the creditor had obtained judgments before filing his creditor's bill. It is also the general rule that in addition to obtaining a judgment the creditor is required to have execution issued and returned unsatisfied, in whole or in part, before a court of equity will entertain a creditor's bill. (15 C. J. 1394.) The issuing of the execution and its return unsatisfied is usually deemed a sufficient showing that the creditor does not have an adequate remedy at law for the collection of his debt. (*Breitkreutz v. Bank,* 70 Kan. 698, 703, 79 Pac. 686.) But this is not the only way it may be shown that the remedy at law is inadequate. This may be shown by allegations in the creditor's bill that the debtor is insolvent, or has no property subject to execution, and establishing such allegations by proof. In that situation the creditor is not required to do the useless thing of causing an execution to be issued and returned unsatisfied before the court of equity would entertain the creditor's suit. In *Taylor v. Stone & Lime Co.,* 38 Kan. 547, 16 Pac. 751, it was held:

"In an action to ascertain the interest of a judgment debtor in land, which

is sought to be subjected to execution to satisfy a judgment, it is not necessary that an execution should first be returned unsatisfied, when such debtor is wholly insolvent." (Syl. ¶ 3.)

In *Smith v. Hensen,* 89 Kan. 792, 132 Pac. 997, it was held:

"Although a judgment creditor may have a right to sell upon execution the real estate belonging to his debtor, yet, where the record title is in some one else a proceeding in equity may be maintained in advance to determine the true ownership." (Syl. ¶ 2.)

See, also, *Bank v. Creek,* 101 Kan. 552, 167 Pac. 1053, where the funds sought to be reached stood in the name of a partnership, and it was said:

"The formality of a useless execution was not essential." (p. 553.)

In *Benson v. Altenburg,* 124 Kan. 296, 259 Pac. 791, it was held:

"While the ordinary rule is that a creditor must exhaust all process to secure a lien upon the debtor's property before filing an action in the nature of a creditor's bill to set aside a fraudulent conveyance, a judgment will not be reversed for failure to cause issue and return of execution where it was shown that the debtor had no property upon which the execution could be levied and that issue of an execution would have served no useful purpose." (Syl. ¶ 3.)

See, also, 27 C. J. 740; *Metzger v. Burnett,* 5 Kan. 374.

Appellants argue that the judgments in question did not become a lien upon the land for the reason that it was conveyed a few days prior to the day of the beginning of court at which the judgments were rendered. It is true that real property conveyed before judgment cannot be subjected to the payment of such judgment unless in an action brought for the purpose it is alleged and proved that it was conveyed with the intent to prevent the judgment being enforced against it. (*Van Vliet v. Halsey,* 37 Kan. 116, 14 Pac. 482.) That was the question at issue in this case. The judgment was a lien on all the right, title, interest and equity of C. Frank Tawzer in the land without regard to where and in whom was the legal title. (*Kirkwood v. Koester,* 11 Kan. 471.) Perhaps the receiver of the bank could have sold this property under execution, as was done in *Peters v. Bank,* 106 Kan. 1, 185 Pac. 892, and other cases. But such a remedy has frequently been regarded as inadequate (*Schofield v. Ute Coal & Coke Co.,* 92 Fed. 269), for the reasons that the grantee in the deed was not a party to the action in which the judgment was rendered; at some time it would be necessary for his interest in the matter to be determined. The uncertainty of estab-

lishing whether it was a *bona fide* sale or a fraudulent one would perhaps affect the price which the property would bring at a sale. In this situation it was appropriate to bring the action in the nature of a creditor's suit to remove or set aside the conveyance alleged to have been fraudulent as constituting an impediment to the enforcement of the lien before a sale of the property under the judgment. Such an action in aid of the legal remedy is cognizable by a court of equity. (27 C. J. 719.)

Appellants raise the point that one of the notes sued on in the actions in which the judgments were rendered showed an indorsement to the War Finance Corporation, and they argue that a judgment obtained on that note by the receiver of the bank was void and could not form the basis of a creditor's bill. The contention has no merit for the reason, first, that the judgment on the note was not appealed from and had become final; and, second, had the question been raised in the action on the note it would have been unavailing; the note was payable to the First State Bank, and its receiver had possession of it and brought it into court at the time judgment was rendered. The fact that the bank had at one time placed the note with the War Finance Corporation did not establish that it was not the owner of the note at the time suit was brought and judgment taken.

Appellants argue that the evidence did not sustain the finding and judgment of the court. We have carefully examined the evidence and find it ample to support the judgment of the court. We do not deem it necessary to set it out in full.

On the hearing of a motion for a new trial an affidavit was presented that C. Frank Tawzer owned certain lots in the city of Minneola the title to which stood of record in his name. This was evidently done with the view of showing that there was property which could have been reached by execution, and that a new trial should have been granted because of this showing. If this contention had any merit there is no reason why it could not have been shown at the trial of the case. Even at the hearing of the motion for a new trial there is nothing to indicate the value of these lots, or whether they were exempt. It was not error to refuse a new trial for this reason.

The judgment of the court below is affirmed.