No. 33,348

C. C. Achorn, *Appellee*, v. Orval F. Parker and Flossie C. Parker, *Appellants*.

(67 P. 2d 561)

Opinion filed May 8, 1937.

*A. L. Moffat,* of Kinsley, for the appellants.

*Howard Rooney* and *Russell L. Hazzard,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action in the nature of a creditor's bill to set aside certain deeds from a husband to his wife alleged to have been executed in fraud of creditors, particularly the plaintiff. The trial court made findings of fact and rendered judgment for plaintiff. Defendants have appealed.

The court's findings may be summarized as follows: On September 28, 1933, in an action then pending in the federal court, sitting in Sedgwick county, in which C. C. Achorn was plaintiff and O. F. Parker and one J. L. Russell were defendants, plaintiff recovered a personal judgment "against the defendants and each of them for the sum of $3,500," with interest and costs. No part of this judg-

ment has been paid, and there was no evidence that execution had been issued thereon, or that it had been filed for record in Edwards county. On November 28, 1933, O. F. Parker and wife conveyed to their daughter their homestead in Ford county. On May 9, 1934, one W. F. Parker died intestate, leaving surviving him his widow, Sarah Parker, his son, O. F. Parker, and other heirs, and also leaving a substantial estate consisting of real and personal property. On May 12, 1934, O. F. Parker assigned to his wife his interest in the personal estate of his father, and also executed a deed to his wife for his undivided interest in his father's real property and recorded both instruments in the office of the register of deeds of Edwards county. On May 17, 1934, the heirs of W. F. Parker agreed upon a division of his estate by which O. F. Parker and his wife, Flossie C. Parker, acquired title to a certain 240 acres of land in Edwards county, other heirs getting other land or property of the estate. On the same day O. F. Parker and wife executed a mortgage for $6,000 on this 240 acres to Sarah Parker, who permitted O. F. Parker to use it as collateral security for his note of $10,000 given to a bank for a cattle loan on 374 head of cattle which he bought. On May 28, 1934, O. F. Parker opened an account in a bank at Fellsburg in the name of his wife and obtained a loan from the bank by signing a note "Flossie C. Parker, by O. F. Parker." On May 18, 1934, a petition for the appointment of an administrator of the estate of W. F. Parker was filed in probate court, and on June 4, 1934, O. F. Parker made a second assignment to his wife of his interest in the personal property of his father's estate and filed this assignment in the probate court. At the time he executed the above assignments and deed in favor of Flossie C. Parker, O. F. Parker was insolvent, and was still insolvent at the time of the trial. The assignments and deed were executed by O. F. Parker with the fraudulent intent to hinder and delay his creditors, and especially the plaintiff; and his wife, Flossie C. Parker, had notice and knowledge of this fraudulent intent at the time, but she did not participate in any of the fraudulent intentions on the part of O. F. Parker. Several years prior to these occurrences Flossie C. Parker inherited from her parents between $6,000 and $8,000, the exact amount not being shown. This was deposited in the bank in her name. She and O. F. Parker checked upon the account and it was kept as a "common pocketbook." The exact amount O. F. Parker used of this fund the court was unable to determine from the evidence, except that it was a

considerable portion of it. He intended to pay his wife the money which he used from her inheritance, but there was no agreement between them that he should do so. About 1932 he received a check from his father for $2,000, which he gave to his wife, but later checked that out and used it in planting wheat. No evidence of indebtedness was ever executed by O. F. Parker in favor of his wife for this money, and she made no demand on him for the payment of it and did not request the execution of the above assignments of personal property or deed to real property of the W. F. Parker estate in payment of any indebtedness to her. She was unfamiliar with the details of those transactions and did not know when the assignments and deed were made and recorded and did not remember when she first saw them.

The trial court's conclusions of law may be summarized as follows: The judgment of the federal court, not having been filed for record in the district court of Edwards county, was not a lien upon the real estate of O. F. Parker in that county; it was not necessary for plaintiff to file his judgment of record in Edwards county before bringing his creditor's suit; since the evidence discloses O. F. Parker was insolvent and had no property subject to execution, plaintiff can maintain this creditor's suit without having issued an execution on the judgment in the federal court; the judgment rendered in the federal court is a joint and several judgment against O. F. Parker and J. L. Russell, and it was not necessary for plaintiff to prove that an execution had been issued against J. L. Russell and returned unsatisfied, or that he was insolvent before bringing this action against O. F. Parker; there was no bona fide indebtedness existing between O. F. Parker and his wife at the time he executed the deed to her for his interest in his father's estate, and this conveyance was made with an intent to hinder and delay and defraud the creditors of O. F. Parker, and was received by Flossie C. Parker with notice and knowledge of this fraudulent intent on the part of O. F. Parker.

The trial court found O. F. Parker was insolvent, and also found that he had 374 head of cattle at the time of the trial. Appellants argue that these findings are inconsistent, and that they also disclose plaintiff had an adequate remedy at law by the issue of execution and levy upon the cattle. The point is not well taken. While the evidence on this point is not as clear as it might have been, it fairly shows, and the only reasonable inference to be drawn from it is, that the cattle were purchased with the $10,000 borrowed from the

bank, and the note given for that debt was secured by a mortgage on the cattle. There is no showing the cattle were worth more than the amount of the debt. More than that, O. F. Parker specifically testified that he was insolvent, not only at the time he made the deed to his wife, but at the time of the trial. Appellants argue this action could not be maintained because there was no evidence that an execution had been issued against Parker on the federal court judgment. In support of this argument cases are cited (*Bank v. Ternes,* 110 Kan. 475, 204 Pac. 699; *Farmers State Bank v. Mitchell,* 143 Kan. 286, 55 P. 2d 423) in which it has been said that it was necessary that an execution should be issued and returned unsatisfied before the creditor's suit could be brought. This is only for the purpose of disclosing the insolvency of the debtor, but where it is conceded that the debtor is insolvent, or that fact is definitely shown as it was in this case by O. F. Parker's testimony, it is clear that the issuance of an execution would have been futile and therefore unnecessary before the bringing of the creditor's suit. (*Federal Land Bank v. Tawzer,* 129 Kan. 93, 95, 96, 281 Pac. 904; 15 C. J. 1396; 8 R. C. L. 27.) Appellants further contend that the suit could not be maintained without a showing that the other judgment debtor, Russell, was insolvent, or that an execution had been issued against him and returned unsatisfied. It will be observed that the judgment in the federal court was both joint and several. Plaintiff was entitled to collect the judgment from either of the parties, and in that situation it was not necessary for him to show that Russell was insolvent, or that an execution against him had been issued and returned unsatisfied before bringing a creditor's suit against Parker and wife. (*Dawson v. First Nat. Bank,* 228 Ill. 577, 81 N. E. 1128; *Strong v. Lawrence,* 58 Ia. 55, 12 N. W. 74; *Hodge v. Gray,* 110 Mich. 654, 68 N. W. 979; *Dalton v. Barron,* 293 Mo. 36, 237 S. W. 97, 22 A. L. R. 187; *Loan Co. v. Johnston et al.,* 33 Wyo. 457, 240 Pac. 449; *Campbell v. First National Bank of Barbourville,* 234 Ky. 697, 27 S. W. 2d 975.)

While some decisions support appellants' view, most of those are in states where judgments are joint only and execution must be issued against all joint debtors, as *Euclid Avenue National Bank v. Judkins,* 66 Ark. 486, 51 S. W. 632; *Richardson v. Crouch,* 84 Ind. App. 234, 149 N. E. 733; *Burne et al. v. Kunzman et al.* (N. J. Eq.), 19 Atl. 667. That is not the rule in this state (*Richardson v. Painter,* 80 Kan. 574, 102 Pac. 1099; *Winter v. Dunlap,* 84 Kan. 519, 114

Pac. 1057), unless one of the judgment debtors is principal debtor and the other a surety (G. S. 1935, 60-3427), which is not contended here.

Appellants contend that Parker owed his wife for money he had borrowed from her, or which he had used from her inheritance. The trial court found this money was used in a common enterprise, that there was no agreement by which it was loaned from the wife to the husband, nor any agreement that it should be paid back, and hence that there was no bona fide indebtedness; that the wife had never asked for the repayment, and in fact that the deed made to her by O. F. Parker for his interest in his father's estate was not given for the purpose of paying such an indebtedness. At best these are questions of fact. The trial court had ample evidence on which to make the findings on this point and they are controlling.

The result is, the judgment of the court below must be affirmed. It is so ordered.