Schillinger v. Boes, &c.

---

CASE 49—PETITION EQUITY—MARCH 12.

## Schillinger v. Boes, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. BENEFIT SOCIETIES—CHANGE OF BENEFICIARY.—Where the charter of a mutual benefit society expressly empowers any member holding a benefit certificate to designate as the beneficiary another than the person originally designated therein, the right to make the change can not be questioned. The statute expressly authorizing the change, the question of public policy does not arise.

2 SAME.—Where it appears from the charter of such a society that the object of the society is to provide for the *families* of its deceased members, a member holding a benefit certificate in which his wife is named as the beneficiary, may, with her consent and the consent of the order, make the certificate payable to his children; and such a change is not fraudulent as to the creditors of the wife, she having no vested interest in the fund.

3 SAME—BENEFIT FUND EXEMPT FROM EXECUTION.—The charter of the Ancient Order of United Workingmen, a benevolent institution, requires the order to disburse the beneficiary fund for the relief of the families of deceased members, and provides that this fund so created and set apart shall be exempt from execution, and shall, under no circumstances, be liable to be taken by any process to pay any debt of such deceased member. A benefit certificate was issued to B., payable to his wife, as he had the right to direct. B. having died, the wife's creditors seek to subject the fund due upon the certificate to the wife's debts. *Held*—That the fund, although payable to the wife, is for the benefit of the member's family, and is exempt not only from the deceased member's debts, but from the debts of any member of his family.

*Under the general insurance law of the State*, the certificate being for the benefit of a married woman, the fund could not be

Schillinger v. Boes, &c.

reached for her debts, unless the act of 1876 *exempting* such benevolent associations from the provisions of the general insurance laws prevents the application of any of those provisions whatever—a question which does not seem to be determined, as the charter of the society in this case exempts the fund.

4. THE CHARTERS OF SUCH BENEVOLENT ISTITUTIONS SHOULD BE LIBERALLY CONSTRUED in favor of the objects of their bounty, and so as to prevent the application of their funds to the benefit of those who are strangers to the organization.

BROWN, HUMPHREY & DAVIE FOR APPELLANT.

1. Appellant, Mrs. Boes, was empowered to trade as a *feme sole*, and had power to create the debts sued on. (Hart v. Grigsby, 14 Bush, 554.)

2. The certificates or policies of insurance in the three benefit societies were originally made payable to her, and created a vested estate and property right in her, which was subject to her debts. (Weisert v. Muehl, 81 Ky., 886.)

3. The charters of the different societies provided that the insurance fund should be exempt from the debts of the "member," but did not exempt it from the debts of the beneficiary, the wife. (Geiger v. McLin, 78 Ky., 232.)

4. Nor was this fund payable to the wife exempt under the thirtieth and thirty-first sections of the insurance law of 1870; because, by the act of March 6, 1876, these benefit societies are removed from the operation of the insurance law of 1870. (Acts 1876, vol. 1.)

5. Mrs. Boes, having a vested property right in the insurance policies on her husband's life, payable at his death, and she being in debt, it was a fraud on her creditors for her to have two of the three policies changed and made payable to her children, while her husband was on his death-bed, for the purpose of defeating her creditors. (Stokes v. Coffey, 8 Bush, 536; Elliott's Appeal, 50 Pa. St., 75; Ketchings v. Manlove, 39 Miss., 655; 29 Beavan, 637.)

6. The policy in one of the companies still stands payable to her, and its charter does not exempt it from her debts, but only from her husband's debts. (Acts 1873, vol. 1, 199, section 5.)

M. A. & D. A. SACHS FOR APPELLEES.

1. Mrs. Boes is not liable for the debts sued on, her husband having no authority to bind her therefor.

The burden was on appellant to show that Mrs. Boes was the principal debtor and he only her surety, which he has failed to do.

2. Under section 5 of the charter of the Order of United Workmen the fund arising from the membership of the decedent therein is totally exempt. And even if this were not so, the object for which the fund is established, as shown in section 4 of the charter, would prevent the

Schillinger v. Boes, &c.

acts of parties or creditors from diverting funds from the family of the member, including in the term "family" all of the children.

· The provisions of the charters of such societies are to be liberally construed in favor of the families of members and enforced as parts of the contract of insurance. And the fund must go as directed in the act of incorporation, under all circumstances, no matter what the contract may be. (Ky. M. M. L. Ins. Co. v. Miller's Adm'r, 13 Bush, 494; Bayse v. Adams, 5 Ky. Law Rep., 9; Weisert v. Muehl, *Ibid.,* 285; VanBibber v. VanBibber, 6 Ky. Law Rep., 593; Ky. Granger's Mut. Benefit Society, 7 Ky. Law Rep., 750.)

The case of Geiger v. McLin, 78 Ky., 232, commented on.

3. Under the charter of the Knights of Honor Mrs. Boes held the benefit certificate "subject to the further disposal" of her husband, the member, and, therefore, held at most but a contingent right, and, therefore, her creditors cannot complain because the fund, by the direction of the member, was made payable to another. (Session Acts 1876, vol. 2, p. 706; Richmond's Adm'r v. Johnson, 28 Minn., 447; 20 Cent. Law J., 266; *Ibid.,* 393.)

In any event, the fund was exempt from the debts of Mrs. Boes, and the conveyance of exempt property, even though made with the intention to defraud creditors, will not be set aside at their instance. (Lishy, &c., v. Perry, 6 Bush, 516.)

4. Under the charter of the National Mutual Benefit Association (Acts 1868, vol. 2, p. 366), the "legal heirs" of the member were the beneficiaries of the fund arising from membership, and the fact that the certificate was made payable to Mrs. Boes did not affect their interest. Therefore, the creditors of Mrs. Boes have no right to complain of the assignment of the certificate. (See authorities already cited.)

5. Independent of the charters of the several benefit societies referred to, the insurance funds in controversy are exempt from the debts of Catherine Boes under the "married woman's life insurance statute." (Acts 1869-70, vol. 1, p. 71, secs. 30 and 31; Edie v. Slimmon, 26 N. Y., 9; Smile v. Quinn, 90 N. Y., 492.)

It is the policy of the law to give the insurance fund to the widow or children wherever it is possible to do so. (Pence v. Conn. Mut. Life Ins. Co., 8 Ins. Law J., 746; Succession of Herring, 26 La. Ann., 326; Stokes v. Coffee, 8 Bush, 533.)

Under the insurance statute the fund in controversy was *separate* estate, and, therefore, cannot be subjected, as it was not charged as the law requires separate estate to be charged. (Bishop on Married Women, ed. 1873, vol. 1, sec. 796; Hackett v. Metcalfe, 6 Bush, 355; Garrett v. Lacey, 7 Ky. Law Rep., 671; Lee v. Murrell, 7 Ky. Law Rep., 598; McKee v. Sypert, 6 Ky. Law Rep., 518.)

6. Even if the statute is not applicable, the fund is exempt under the general principles of law. (*In re* Murrin, 2 Dillon, U. S. Cir. Ct. Rep., 123.)

7. As to the insurance benefits that were changed from the wife to her *as trustee for the children*, each payment, after the change of beneficiary, created a new contract of insurance, and the beneficiary under the old contract, before the change, had no more interest. (Thompson v. Cundiff, 11 Bush, 573; St. Louis M. L. Ins. Co. v. Grigsby, 10 Bush, 310.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The plaintiff below, who is the appellant in this court, instituted this action against the appellee, Catharine Boes, to recover the amount of five notes alleged to have been paid off by him as her surety.

The indebtedness was created by the appellee while she was a *feme covert*, but while conducting a grocery store in her own name, she having been empowered to trade as a *feme sole* by the chancellor, under the provisions of the statute enacted for such purposes.

She denies her liability for any of the debts, and attempts to show that the notes the appellant paid off were the mere renewals of the indebtedness of her husband, for which she was in no manner responsible, created before and after she was authorized to conduct business as an unmarried woman.

There is some conflict in the proof, as well as circumstances conducing to show that some of the paper was the evidence of a former indebtedness by the husband; but after a review of the testimony, we are disposed to concur with the chancellor, that these notes were the obligations of the wife, and for which she was primarily liable.

The appellant, when he instituted the action, obtained an attachment and garnishee, by which he garnished certain funds in the hands of three benevolent or charitable institutions, of which the husband of the

appellee was a member, and that, as was alleged, belonged to the wife as the only beneficiary.

The husband of the appellee insured his life in three companies, or rather was a member of three associations, with the certificate of insurance *payable to his wife Catharine Boes, the present appellee.* The policy in the Knights of Honor was two thousand dollars; National Mutual Benefit Association, four thousand dollars; United Order of Workingmen, two thousand dollars. The husband of Catharine, during his last illness, and but a few days prior to his death, with the consent of his wife, changed the beneficiaries of his policy in the Knights of Honor to his wife, "*in trust for her and his children.*" In the United Order of Workingmen the benefit certificate for the wife was never changed. In the National Mutual Benefit Association the benefit certificate was transferred to Catharine Boes *in trust* for the children.

The benefit certificates in each association having been originally payable to the *wife alone,* it is maintained by counsel for the appellant that she became vested with a fixed and certain interest, payable at the death of the husband, and that any transfer made by her consent, or jointly with her husband, of these benefits to their children was a fraud on the rights of creditors. Secondly, that such transfers are against public policy and void.

It becomes necessary, in determining these questions, to look to the acts of incorporation creating these several associations, with a view of ascertaining the object to be accomplished as well as the manner in which benefit certificates are issued, and the mode of transferring or changing the beneficiary by the member, or whether any such right exists by reason of the several charters.

These associations are on the mutual plan, with assessments made upon each member that constitutes the fund out of which the insurance or benefits are paid. The charter and by-laws show that the prime object of each is to aid the members and their families or beneficiaries, and they can only be regarded as benevolent and charitable associations.

In March, 1881, a certificate was issued from the Knights of Honor to John Boes, the husband, who was a member, by which the Supreme Lodge agreed to pay out of the widows and orphans' fund at his death the sum of two thousand dollars to his wife Catharine, under the laws controlling the order; "*provided, that this certificate shall not have been surrendered by said member or canceled at his request, and another have been issued in accordance with the laws of this order.*"

It is provided by section 4 of chapter 22 of the laws of this order, that "each applicant shall direct in his application to whom he desires his benefit paid, which shall be subject to such further disposal of the benefit as the member may thereafter direct, in accordance with the laws of this order, and such directions shall be entered on the benefit certificate." By section 5, it is provided that a member may, at any time while in good standing, surrender his certificate, and the Supreme Lodge shall cancel the old certificate and issue a new one in lieu thereof to such member, payable as he shall have directed.

The member as well as the beneficiary acquires his rights under the act of incorporation, and when the law of the association, as well as the certificate of benefit,

empowers the member to change the beneficiary, there is no question of public policy involved, and the change being authorized by an express law or statute of the order, the right to make the change can not be questioned.

This rule is not in conflict with the case of Bayse v. Adams, 81 Ky., 368. In that case the right to change the beneficiary was not expressly granted by the charter, and no consent obtained to the transfer; nor was it made to one who had an insurable interest in the life of the member. The National Mutual Benefit Association issued the policy in that case, and if to the wife, unless expressly prohibited by the charter, we see no reason why a change, with the consent of the order and the beneficiary, might not have been made to the children. This order, the Knights of Honor, had a fund known as the widows and orphans' benefit fund, created for and payable to the family of deceased members (if not otherwise directed), and this fund has in part been created and sustained by the contribution of the deceased member, and should, therefore, be applied to the use and benefit of his children by the consent of the order and the original beneficiary. The wife, who was named as the beneficiary in the first certificate, paid no part of the dues or calls made by the order, but the husband (the member), both before and after the change was made, paid the regular dues and was contributing his means for the purpose of providing for his children at his death. He doubtless saw or knew that his wife was involved, and therefore wished the fund, to which she would have been entitled, in part at least, but for the change, paid to the children.

No creditor of the wife was defrauded. He had the right to cancel the certificate or decline to pay the dues, and thereby forfeit his right to the insurance. If the wife had a vested interest such as would pass the title, there is no reason why the benefits might not have been garnished prior to the husband's death. If this could be done, it would virtually annul the entire object of the association, and defeat the benevolent intention of the member by appropriating his means used in creating this fund to the payment of the debts of the beneficiary. The change here was from the wife to their children, and at a time when no creditor could have attached the fund either for the debt of the husband, who was the member, or the wife, who was the beneficiary. There is no rule of public policy that would preclude the husband or wife from making their children the beneficiaries of this fund; but, on the contrary, such is the principal or leading feature of all like organizations to enable the member to provide for his family. Here is no trade made or assignment of benefits to those who had no insurable interest in the life of the member, against or without the consent of the beneficiary, as was the case in Bayse v. Adams, but a change effected by which the entire family of the insured member were made the recipients of the benefits resulting from these benevolent associations. The same principle should apply to each of these associations, and we see no reason for holding the transfer fraudulent as to any of the creditors of the wife. To hold otherwise would, in effect, greatly impair, if not entirely destroy, the benefits resulting to the public from these benevolent organizations.

It is argued that the certificate in the order of United Workingmen never having been changed, that the fund belonged to the wife, and was liable for her debts ; and the chancellor, adopting that view, gave to the children an equal interest with the mother, and subjected her interests to the payment of appellant's claims.

The beneficiary fund in this order is created for the relief of members and their families, and by the organic law of the order, that necessarily enters into and becomes a part of the benefit certificate, the order is required to disburse this beneficiary fund *for the relief of the families of the member as well as the member himself.* It may be that the member may name a particular member of his family to whom he desires the money paid and the certificate issued ; but when issued to the wife, it follows that it is for the benefit of the member's family.

Section 5 of the act creating the order provides that this " fund so provided and set apart shall be exempt from execution, and shall, under no circumstances, be liable to be seized, taken or appropriated, by any legal or equitable process, to pay any debt of such deceased member." It is evident that this fund thus set apart for the benevolent purposes contemplated, was to be exempt from execution, and, as against the member, under no circumstances can the creditor reach it. Such was the intention of the order in its organization.

The fund was not only for the member but for his family, and the fund itself is exempt, whether for a debt against one of the family or against the member. The members of the family become interested in the fund, and when created, as it is by the members, for that

purpose, there is every reason for sustaining the exemption.

Under the general insurance law of the State, the certificate being for the benefit of a married woman, the fund could not be reached for her debts. This law embraced all descriptions of policies, the ordinary life policy where large sums are invested by way of premiums, and often a large surplus to be divided between its members, as well as companies organized for purely benevolent purposes; but the Legislature, in its session of 1876, enacted "that all Masonic orders, Odd Fellows, Ancient Order of United Workmen, as well as all associations incorporated for purposes of mutual protection and relief of its members, and for the payment of stipulated sums of money to their families, etc., are hereby declared not to be life insurance companies in the meaning of the general insurance laws of the State, *and they are and shall forever be exempt from the provisions of said general insurance laws.*"

The law-making power was evidently intending to remove such burdens as were imposed on insurance companies whose object was neither private nor corporate gain, and to place no obstacle in the way of the disinterested benevolence of such relief associations as those whose charters are before us, and may, in enacting the clause exempting such orders from the provisions of the general law, have gone too far; still, the liberal construction that should be given all such charters by courts, to enable the order to accomplish its benevolent designs, would suggest the necessity as well as the propriety of making the exempting clause of the act establishing this order apply to the members of the family as well as to the member.

In Geiger & Board v. McLin, 78 Ky., 232, it was held that the son of the member had no *interest* in the institution, and that the act creating the Kentucky Masonic Mutual Life Insurance Company, that provided "no part of the stock or interest which any member or his widow or children may have in said institution, shall be subject to any debt against him or any of them" was intended to apply only to the member or the one having an interest in the institution; and while this was certainly not a liberal interpretation of the meaning of that act, in the case before us the fund itself is exempt, and it is the plain meaning of the charter that this fund must be and is set apart for the member and his family, and cannot be subjected to the payment of their debts. This construction harmonizes with the legislative action on the subject, as well as a rule of construction that, when applied to such organizations, requires a liberal construction of their charter in favor of the objects of their bounty, and to prevent the application of their funds to the benefit of those who are strangers to the organization.

The judgment is affirmed on the original and reversed on the cross-appeal, with directions to dismiss the proceedings in so far as they seek to subject the fund or any part of it to the payment of the debts of appellant.