GOEKE et al. v. BAUMGART et al.

No. 2932.

Court of Civil Appeals of Texas.
Beaumont.

March 26, 1936.

Hodde & Bouldin, R. E. Pennington, and W. W. Searcy, all of Brenham, for appellants.

W. J. Embrey and Richard Spinn, both of Brenham, for appellees.

WALKER, Chief Justice.

Alice C. Goeke and certain other parties, plaintiffs below, creditors of the estate of Otto E. Baumgart, deceased, instituted this suit in the district court of Washington county against Ernest H. Baumgart, individually and as executor of the estate of Otto E. Baumgart, deceased, and against the surviving children of the deceased, and against Southland Life Insurance Company, Texas Mutual Life Association of Waco, and the Grimes County Mutual Life Association—a creditors' suit—to set aside a change made by Otto E. Baumgart in the beneficiaries in the insurance policies issued to him by the defendant insurance companies from his estate to his children. For cause of action plaintiffs alleged that in his lifetime the deceased became indebted to them in large sums of money on his representation to them that he carried a large amount of life insurance payable to his estate for the benefit of his creditors; that but for this representation they would not have become creditors of the deceased; that he, in his lifetime, and his estate after his death, were insolvent; that before his death, fraudulently, and for the purpose of defrauding his creditors, and for the purpose of giving an unlawful preference to his children, he changed the beneficiaries in his life insurance policies from his estate to his children; if the change was not made by the conscious fraud of the deceased, then it was fraudulently induced by his children by undue influence and by duress at a time when the deceased did not have the mental capacity to make the change. It is further alleged that at the time of the death of the deceased the defendant insurance companies had in effect policies of insurance on his life, that they had not paid these policies, and that they had knowledge of and were parties to the change of beneficiaries from the estate to the children. It was further alleged that the suit was brought for the benefit of all the creditors of the estate of the deceased, and that the executor was fraudulently refusing to represent the interest of the estate, but was conspiring with the other defendants to defraud the creditors. The Southland Life Insurance Company answered that it had paid the full amount of its policy to the beneficiaries. The other two insurance companies answered that they did not know the motive in the change of beneficiaries, and tendered the amount of their policies into court. The executor and the other defendants answered by demurrers, pleas in abatement and misjoinder of parties and causes of action, general denial, and specially that the deceased changed the beneficiaries in the policies to pay his children a bona fide indebtedness due them by him and for the purpose of having them take care of him the balance of his life, and on the further condition that they pay the premiums and assessments against the policies. The case was submitted to the

jury on the following questions, answered as indicated:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that Otto E. Baumgart was indebted to the plaintiffs, as stated in the petition?" Answer: "No."

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that at the time the original notes were executed by Otto E. Baumgart in favor of the respective plaintiffs, or at the time of the renewal of said notes, that he, the said Otto E. Baumgart, represented to them that he had considerable amount of life insurance payable to his estate, and that in the event of his death, before the said notes were paid in full, that his creditors would be paid first out of such insurance?" Answer: "No."

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that these representations of the said Otto E. Baumgart induced the plaintiffs to make the loans originally, or to consent to the renewal of the said notes?"

"The jury did not answer this question, for the reason that the court had charged that if Special Issue No. 2 were answered 'No' then they did not have to answer this question."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that Otto E. Baumgart was insolvent at the time he made the changes in the beneficiaries of the policies involved in this suit?" Answer: "No."

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that Otto E. Baumgart in requesting and procuring the change in the beneficiaries in his life insurance policies did so for the purposes of defrauding his creditors?" Answer: "No."

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that Otto E. Baumgart owed his daughter, Gladys Hoffman, the sum of $4,000.00, as shown by the notes introduced in evidence?" Answer: "Yes."

"Special Issue No. 7.

"Do you find from a preponderance of the evidence that Otto E. Baumgart transferred the Southland Life Policy and the Grimes County Mutual Policy to his daughter, Gladys Hoffman, for the purpose of pay-ing in whole or in part, such debt which he owed her in the sum of $4,000.00?" Answer: "Yes."

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that Otto E. Baumgart transferred to his children the other policies in the suit, upon a contract made with them at the time, whereby such children were to pay all the premiums, dues, assessments, etc., to keep such policies in force and provide him with nursing, medical attention, etc., during his lifetime, pay his personal obligations, and also to pay said children in part for their mother's property which he had used, given to creditors, or for which they had not been paid?" Answer: "Yes."

From the judgment entered in favor of the defendants, on the verdict of the jury, plaintiffs duly prosecuted their appeal to the Galveston Court of Civil Appeals, and it was transferred to this court by orders of the Supreme Court.

By their first, second, and third assignments of error appellants assert that the answers of the jury to questions Nos. 1, 2, and 4 were against the undisputed evidence and contrary to all the evidence in the case. The controlling issue in the case was submitted to the jury by question No. 5; the answer to that question was sufficient to support the judgment; and that answer in no way conflicted with the answers to questions Nos. 1, 2, and 4. These assignments present immaterial error, and are therefore overruled. In Texas & Pacific R. Co. v. Eddleman (Tex.Civ.App.) 175 S.W. 775, 777, it was said: "A finding upon an immaterial issue in a special verdict, if the judgment does not conflict with the findings on material issues, is immaterial." See, also, McBurnett v. Smith & McCallin (Tex.Civ.App.) 286 S.W. 599; Riedel v. Wenzel (Tex.Civ.App.) 186 S.W. 386; Southwestern Portland Cement Co. v. Challen (Tex.Civ.App.) 200 S.W. 213; Zucht v. San Antonio School Board (Tex.Civ.App.) 170 S.W. 840; Andrews v. Wilding (Tex.Civ.App.) 193 S.W. 192; Stark v. George (Tex.Civ.App.) 237 S.W. 948; Atlas Brick Co. v. North (Tex.Civ.App.) 2 S.W.(2d) 980, 987; San Antonio M. & S. Co. v. Central Texas P. & T. Co. (Tex.Civ.App.) 295 S.W. 229, 231; Wade v. First National Bank (Tex.Civ.App.) 263 S.W. 654, 657.

The fourth assignment is that the jury's answer to question No. 5 was against all the evidence in the case. Appellees make the following statement in support of the

jury's answer to this question:

"There was not a single witness who testified that he or she loaned him any money on the strength of Otto E. Baumgart carrying any insurance to protect any loans he procured from them, at the time he made same. * * *

"None of the policies involved in the suit were ever placed with any creditor as security or collateral, or turned over to them or in their possession. None of them were ever named beneficiaries in such policies. Before the changes the policies were payable to the Estate of Otto E. Baumgart. The evidence does not show that he ever at any time told any creditor how much insurance he carried, where he held same, or of any specific policies or insurance in force, or that any of such insurance or any policies were taken out specifically for the benefit of any particular creditor, or in his behalf.

"The policies involved in the suit were a policy in the Southland Life Ins. Co. for $3,000.00, on which he borrowed the full cash or loan value of some $800.00; one policy in the Waco Mutual Life Association for $5,000.00, and two policies in the Grimes County Mutual Life Association amounting to $3500.00. The last two associations were organized under the mutual aid benefit laws, for issuing such certificates, which had no cash, loan or surrender value, or any extended insurance privileges and lapsed for non-payment of dues, assessments, etc. Otto E. Baumgart changed the Southland Life Policy to his daughter, Gladys Hoffman (to whom he owed $4,000.00 borrowed money), and the other three policies to all of his four children, named therein as such. The evidence shows that prior to the change in the Southland policy, a discussion was had with Mr. Lee Curry, the local agent for such insurance concern. The evidence shows that all changes in beneficiaries in such policies were made in conformity to the rules, regulations and requirements of the Companies, and they accepted and approved the same, and they made no contest of the validity of the changes in this suit.

"Prior to making the changes, Otto E. Baumgart discussed the matter with several of his children and his son-in-law, Mr. Hoffman, yet none of them were in and about him at the time he made the changes, but his daughter, Mrs. Hoffman, Dr. Waldo A. Knolle, attending physician, and two disinterested subscribing witnesses, W. J. Sloan and Search Willis. * * *

"The evidence shows that in these discussions with his children and son-in-law, he told them that he realized that he was unable to take care of himself, and would never be during the remainder of his life, and would be a care and burden on his children, that he realized that he had never settled with them for their mother's one-half of the community estate, and since he had placed all of this property with his creditors, beyond their reach, and which they would never receive, and that he had borrowed $4,000.00 from his daughter, Gladys Hoffman, and she had no security therefor; consequently, he changed the Southland Policy over to her to pay in part the debt he owed to her, provided she paid the premiums on the policy to keep same valid until he died; he also agreed with his children that if they would pay the dues, assessments, premiums, etc., on these mutual aid benefit certificates and keep them in force until he died, and take care of him, furnish him a home, medical attention, nursing, etc., he would make them the beneficiaries in these mutual policies or certificates, which otherwise would lapse and become void for nonpayment of assessments, which he would be unable to pay or meet, and which would pay to them in part, something on the amount of property which they were entitled to have received from their mother's interest in the community, and of which they had not received one penny. They agreed to this proposition and paid the dues, assessments, premiums on the policies and furnished him a home, nursing care, medical attention and took care of him until he died May 31st, 1933.

"* * * The evidence shows that the defendant presented to the jury a statement of the community estate of Otto E. Baumgart and his wife, Pauline Baumgart, at the time of her death in 1926, giving the items of property, and its truthfulness was not contested by the plaintiffs. They showed that after their mother's death, they never received a penny of this property, nor were they settled with by their father for the same. This estate was worth $60,000.00 in 1926, of which they inherited one-half, or $30,000.00. They showed the jury that the creditors had all of this property as security for the debts they held against Otto E. Baumgart, and the plaintiffs never denied this in any manner, shape or form, or fashion. The statement shows that 13 creditors received $41,921.90, in property surrendered as security to settle debts against the estate alone. This was not questioned."

We think the jury's answer to question No. 5 is well supported by the testimony. The fourth assignment of error is overruled. For a second reason, the fourth assignment of error is without merit. Beyond question the deceased was heavily indebted to his children and had the legal right to pay them. If it be conceded that he changed the beneficiaries in his policies to prevent his creditors from receiving the proceeds of his life insurance, yet the change of beneficiaries was not an act of fraud against his creditors. In Gray v. Kaliski, 45 S.W.(2d) 157, 160, speaking for the Supreme Court, the Commission of Appeals said: "The moving or primary purpose of a debtor in paying a debt to a creditor by conveying to him property, or in mortgaging property to secure a debt due to him, may be to prevent some other creditor from subjecting it to the payment of a sum due to him, but this, within the meaning of the law, will not render the conveyance or mortgage fraudulent as to such creditor, if the purpose is solely to have payment or security for the sum actually due."

Of course, this conclusion of law is based upon the fact conclusion that the creditors of the deceased did not make their loans to him upon the condition that these policies were to be paid to his estate.

■ It also seems to be the law that mutual aid associations of the nature of Texas Mutual Life Association of Waco and Grimes County Mutual Life Association partake of the nature of fraternal benefit associations; on this conclusion appellants did not plead a cause of action against the two mutual aid associations, for, as said by the Supreme Court of Tennessee in Alfsen v. Crouch, 115 Tenn. 352, 89 S.W. 329, 330: "The beneficiary in a policy in a fraternal order has no vested interest therein as against the insured, and has no right to assail a change of beneficiaries on any alleged ground of fraud." See, also, Hoeft v. Supreme Lodge Knights of Honor, 113 Cal. 91, 45 P. 185, 33 L.R.A. 174; Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; Schillinger v. Boes, 85 Ky. 357, 3 S.W. 427.

■ The statement made above under the fourth assignment of error also answers the fifth assignment that there was no testimony to support the jury's answer to question No. 8.

■ The sixth assignment is that the court erred in refusing to submit to the jury the following question: "Did Otto E. Baumgart have sufficient mental capacity to understand the import of a change of beneficiaries at the time the change was made?"

This question was not raised by the evidence: there was no testimony raising the issue that the deceased, at the time he made the change in his beneficiaries, did not have the mental capacity to make this change. Again we quote from appellees' brief:

"The testimony in the record discloses that Otto E. Baumgart suffered a stroke of apoplexy the first part of March, 1933, and was in the hospital for about 8 days, and then removed to his home. He died on May 31st, 1933, living about 3 months after suffering the first stroke. He had 3 strokes, so the attending physician testified, the last two immediately before his death. The changes in the beneficiaries in the policies were made on March 28th, 30th, and 31st, 1933. The subscribing witnesses to the changes made in the policies were Dr. W. A. Knolle, W. J. Sloan and Search Willis. The attending physician, Dr. W. A. Knolle, whose testimony is found on pages 368 to 374, Statement of Facts, was a subscribing witness on all four policies in issue. He testified that he waited on Mr. Baumgart during his entire illness. He saw Mr. Baumgart write his name to all of these policies; said Otto E. Baumgart signed each policy himself. On cross-examination, the plaintiffs did not even seek to ask him any questions as to the mental capacity of Mr. Baumgart to know the import of his acts, at the time these changes were made on the respective policies. * * * The other attending physician, Dr. R. E. Nicholson, was not called to the stand as a witness at all; he was not a subscribing witness to the changes in the policies. Mr. W. J. Sloan was a witness in the case on other matters (See S. of F. Pages 63 to 70) yet he was not asked a question about the mental condition of the insured, Otto E. Baumgart, at the time the changes were made. The other subscribing witness to the changes in the policies, Search Willis, was not called to the stand. * * *

"There is no testimony or evidence whatever in the record which discloses that Otto E. Baumgart lacked mental capacity at the time he made the changes in the policies, as plead or changed by appellants.

"The only evidence in the record at all, with respect to his mental condition at any time, was that of the witnesses, Mr. and

Mrs. J. F. Pressley, W. H. Runge and H. H. Runge. Mrs. Pressley testified (Pg. 140) that about two weeks after he went home, she visited him and he cried and said he hoped he could get up and make everything all right. Her husband, Pressley, testified that his mind would come and go. (Page 146) W. H. Runge testified he tried to talk but he couldn't understand him; that was a few weeks before he died. H. H. Runge also testified he visited him, but he couldn't understand him when he talked to him. All of these witnesses were creditors of Otto E. Baumgart.

"None of these witnesses testified to any facts which would have any bearing on his mental condition at the time the changes were made in the policies; giving the greatest effect to such testimony, at best, it only showed a general state of mind at the time of their respective visits, some of which were immediately before he died. None of the testimony would even tend to show that Otto E. Baumgart lacked mental capacity to know what he was doing or the import of his acts at the time he changed the beneficiaries in the policies on March 29th, 30th and 31st, 1933.

"The other evidence in the case discloses, that during the illness of Otto E. Baumgart, he received numerous visitors constantly, and it was only when he was resting or asleep that visitors were denied admittance to see him. It is shown that many prominent citizens visited him at all times, among whom were Judge Ewing, Jack Drumm, Paul Lemm, Jack Green, F. H. Bosse, D. C. Giddings, Robert Appel, W. M. Morriss, W. J. Sloan, Wm. Seidel, C. L. Wilkins, Wm. Morriss, T. C. Blake, Henry Hughes (See pages 344–347).

"The testimony of E. H. Baumgart (50–52, 206–208, 266–267) of Mr. Hoffman (297–300) and Mrs. Gladys Hoffman (344–347) shows the conditions existing as to his physical condition, his affliction, the nursing, visiting of friends, and the expectation of Mr. Baumgart himself, as well as the members of his family, as to his recovery. None of the testimony in the record indicates that, as a general condition, that Mr. Baumgart's mind was in any way affected by reason of the stroke he first suffered."

■■ The seventh assignment is that the court erred in refusing to permit appellants to show by W. J. Sloan, assistant cashier, "the amount of money that Otto E. Baumgart had in said bank on the day or dates that the life insurance policies were changed from his estate to his children". This ruling did not constitute error, first, because appellants' bill does not show the answer appellant expected the witness to give; second, if it was offered on the issue of insolvency, then for the reasons stated under the first, second, and third assignments of error the testimony was immaterial; third, if it was offered on the theory that, contrary to the contention of appellees, the deceased had money in the bank sufficient to pay the premiums and assessments against his insurance policies, then there was no testimony that it would have been available for the purpose of paying the life insurance premiums.

■ We copy the eighth assignment of error, as follows:

"The trial Court erred in permitting the defendants to introduce a certain written instrument, which was signed by no person, and to which the plaintiffs at the time duly objected and excepted to the Court's ruling, and being in reference to matters as follows:

"While the defendant, Ernest H. Baumgart was testifying, he was permitted to testify as to a certain typewritten paper that was signed by no one, and which it was purported should reflect a statement of the financial condition of the parents of this witness at the time the mother of this witness died, which testimony is as follows: [Here follows more than four pages of the brief, giving the testimony of the witness Ernest H. Baumgart, describing the instrument and giving its contents.]"

The only proposition advanced under this assignment against this instrument and the testimony of Ernest H. Baumgart in relation thereto is: "Prejudicial and harmful matters, which are for a self serving purpose, and speculative as to be true, are not proper as evidence before a jury."

This proposition is a mere abstract statement of the law, too general in its nature to direct our attention to any particular complaint against the instrument complained of; and the assignment of error is subject to the same criticism. Certainly it cannot be said "that a certain typewritten paper" was not admissible in evidence merely upon the ground that it "was signed by no one," and that seems to be the basis of appellants' assignment of error and proposition.

The judgment of the lower court is in all things affirmed.