Fred F. JOHNSON and Selectivend Corpo-
ration, a corporation, Appellants,

v.

Nadina V. FOTIE, Individually and as Trus-
tee; Claudette Fotie, Nanette Fotie, Jean-
ette Fotie, Paulette Fotie and James Ar-
thur Fotie, Minors; and Grace O. Hope,
Respondents,

and

Perrin D. McElroy, Administrator of the
Estate of Joseph A. Fotie, deceased; and
Kansas City Life Insurance Company, a
corporation; Phoenix Mutual Life Insur-
ance Company, a corporation; Penn Mu-
tual Life Insurance Company, a corpora-
tion; and Aetna Life Insurance Com-
pany, a corporation, Defendants.

No. 46049.

Supreme Court of Missouri,
Division No. 2.

Jan. 13, 1958.

W. Raleigh Gough, Kansas City, for appellants.

R. C. Tucker, John Murphy, William H. Wilson, J. Gordon Siddens, Tucker, Murphy, Wilson & Siddens, Kansas City, for respondents.

STOCKARD, Commissioner.

Plaintiffs, Fred F. Johnson and Selectivend Corporation, have appealed from an adverse judgment in their suit in the nature of a creditors' bill.

Plaintiffs went to trial on their third amended petition (the prior petitions are not in the record) which is in one count and in which they alleged that they loaned substantial sums of money to the Rex Welder and Engineering Company (hereafter referred to as "Rex Welder"), in reliance upon written guaranty agreements executed by Joseph A. Fotie and Nadina V. Fotie, his wife; that Joseph A. Fotie is now deceased and Rex Welder is bankrupt; and that prior to his death, Joseph A. Fotie and his wife conveyed away and assigned their property in fraud of their creditors including plaintiffs. Plaintiffs prayed for an accounting and for judgment against Nadina Fotie and the administrator of the estate of Joseph A. Fotie in the amount found to be due, which is averred

to be in excess of $85,000; that they be given a lien upon certain real estate; and that a lien in their favor be declared upon the proceeds of certain life insurance policies.

Rex Welder was what is generally known as a "one man corporation" with Joseph A. Fotie being that man. His wife was a shareholder and a director but she took no part in the management of the company. Rex Welder borrowed substantial sums of money from the Union National Bank of Kansas City, and the loans were handled by Mr. W. R. Warner on behalf of the bank. Mr. and Mrs. Fotie executed a written agreement guaranteeing the payment of the Rex Welder notes. About July 1953, Mr. Fotie had obtained all the money for Rex Welder that the bank "thought he should borrow." However, Mr. Warner had some money which Mr. Fred J. Johnson had made available to him "to lend to people, who at that time we [the bank] didn't think were good enough to get loans." Mr. Warner then made loans to Rex Welder from this money on behalf of plaintiffs. The same general plan was followed as to these loans. The guaranty agreements signed by Mr. and Mrs. Fotie were on the printed form with the name of the bank thereon, but the bank name was marked off and the names of Mr. Johnson and the Selectivend Corporation, of which Mr. Johnson was president, were written above it. Mrs. Fotie contended at the trial that the guaranty agreements had been materially altered, and that at the time she signed them they contained only the name of the bank. The trial court found against her on this issue.

The loans made to Rex Welder on behalf of plaintiffs may be classified into three general groups. The first group consisted of a series of loans totaling $63,931.42. We cannot determine with certainty if this is the total sum of the money advanced or if this is the total of the notes signed by Mr. Fotie on behalf of Rex Welder. The plan followed was for Rex Welder to give a 30 or 60 day note and for Mr. Warner to advance in cash about 90% of the face amount of the note. The discount on these notes was $6,442.45. A total of $27,835.74 was repaid by Rex Welder.

The second group of loans consisted of "advances" to Rex Welder in connection with a contract with the Air Force. Five short term notes were executed totaling $59,000 upon which $48,000 was advanced. Thus the discount on these notes was $11,000.

Mr. Fotie became ill in the early part of 1955, and by agreement Mr. Johnson took over the operation and management of Rex Welder. It was subsequent to this that he made ten "additional advances" amounting to $15,482.89 to meet payrolls, and in one case to buy copper. These additional advances constitute the third group of loans. We cannot determine if the above total of this group represents the amount of the notes or the amount of cash advanced. A total of $50,000 was repaid on groups two and three.

The exact amount of loans made to Rex Welder which plaintiffs contend to be covered by the guaranty agreements is not shown. It would at least include the total of the actual cash advances less the payments, which would be in the neighborhood of $50,000, and would be no more than the total of the notes less payments, which would be in the neighborhood of $67,000. Plaintiffs were allowed a claim in the bankruptcy court against Rex Welder in the amount of "$60,000 or more."

Plaintiffs contend that they are entitled to have the proceeds of the sale of the Fotie house applied to the retirement of the obligations of Mr. and Mrs. Fotie under the guaranty agreements. Mr. and Mrs. Fotie owned their residence as tenants by the entirety. However, there were two deeds of trust on the house to secure notes originally totaling $27,000, but we do not know the amounts remaining unpaid. Apparently the interested parties did not believe that there was much equity in the house and subsequent events proved this

to be correct. After Mr. Fotie became ill, the payments on the notes could not be met and foreclosure was threatened. It was known that Mr. Fotie had but a short time to live, and on May 27, 1955, he and Mrs. Fotie conveyed the house to Grace O. Hope, a straw party for Mr. Logan F. Wyrick who was the holder of the second deed of trust. In consideration for this transfer, Mr. Wyrick agreed that the Foties could remain in possession as long as Mr. Fotie was alive, that he would make the payments on the note secured by the first deed of trust, that the house would subsequently be sold, and that he would forego any claim against Mrs. Fotie if the house did not bring enough to pay all the obligations for which it was security. Mr. Fotie died on July 11, 1955. The house was subsequently sold with the consent of plaintiffs, and after paying off the notes secured by the two deeds of trust, and the incidental costs, there remained a balance of $1,256.76 which is being held in escrow pending the outcome of this suit. Mrs. Fotie claimed the house to be homestead property, and that the remaining balance of the proceeds of the sale are for that reason exempt from the claims of plaintiffs. In plaintiffs' brief submitted to the trial court it was stated that "plaintiffs concede they have no valid claim against the proceeds of sale of the homestead," and that it is admitted that "plaintiffs are not entitled to any judgment against the amount * * * representing the proceeds of sale of the real estate involved herein." The above parts of plaintiffs' brief have been incorporated in a properly approved supplemental transcript. The trial court stated in its memorandum that plaintiffs had waived any and all claims against the proceeds of the real estate, and by its judgment it held that plaintiffs were not entitled to them, but plaintiffs contend on this appeal that they were in error in abandoning this claim, and they now attempt to revive this issue in this court.

Plaintiffs also contend that they are entitled to the proceeds of three insurance policies on the life of Joseph A. Fotie in which, prior to April 15, 1955, certain of his minor children were named as beneficiaries. All of these policies had been in effect for many years. The insurance companies interpleaded and deposited the following amounts with the court: $1,053.93; $2,284.43 and $4,389.63. Two of the policies had been pledged with the University Bank of Kansas City as collateral in some transaction with which we are not concerned, and the trial court authorized and directed the payment to the bank of $3,116.09 leaving a total on deposit from these three policies of only $4,611.90.

On April 18, 1955, Mr. and Mrs. Fotie executed an "insurance trust agreement," which listed the above policies, and named Mrs. Fotie as trustee "for the purpose of operating and maintaining expenses of home for benefit of insured's children [naming them] or such of them as elect to occupy and retain their home with their mother." A short time subsequent to the execution of this trust agreement the designation of the beneficiaries in the above referred to policies were changed to Mrs. Fotie as trustee.

Plaintiffs also contend they are entitled to the proceeds of a policy of life insurance in the amount of $5,000. Rex Welder carried a group policy of term life insurance with Aetna Insurance Company on its employees, including Mr. Fotie. Mrs. Fotie was named as beneficiary. This policy had no cash surrender value. The policy provided for conversion to ordinary life in the same amount upon the termination of employment and upon application within 31 days thereafter without further evidence of insurability. When Mr. Johnson took over the management of Rex Welder, Mr. Fotie's salary was discontinued, and pursuant to the above referred to provision for conversion, the term insurance for Mr. Fotie was converted to a new policy of ordinary life insurance effective May 11, 1955. The beneficiary was Mrs. Fotie as trustee pursuant to the trust agreement dated April 18, 1955. The necessary quarterly premium for the conversion of this insurance was

paid by Mrs. Fotie from funds obtained by cashing in some endowment insurance policies carried on "the children."

Although named as a party defendant, it developed during the trial that Perrin D. McElroy had not been appointed as the administrator of the estate of Joseph A. Fotie, and that there had been no administration of the estate. There is no evidence that plaintiffs sought the appointment of an administrator so that this action could be properly maintained against the estate of Joseph A. Fotie, and therefore, we shall consider that plaintiffs knowingly abandoned any claim against the estate. Plaintiffs unequivocally stated at the beginning of the trial of the case, and now so state in the first point of their brief to this court, that they do not seek a personal judgment against Mrs. Fotie based on the guaranty agreements. The trial court did not purport to enter any money judgment against Mrs. Fotie, and plaintiffs do not assign this as error in the motion for new trial. Therefore, as we understand the issues in this case, the only question before us is whether in this suit in the nature of a creditors' bill plaintiffs are entitled to have the money now in the registry of the court and being held in escrow made available to them to be used in reducing the amount of plaintiffs' claim against Mrs. Fotie based on the guaranty agreements. This immediately presents the question of the effect of the failure of plaintiffs to reduce to judgment their claim against Mrs. Fotie based on the guaranty agreements.

■■ " 'The general rule of law is that a mere general or simple creditor cannot maintain a suit in equity to set aside a fraudulent conveyance, and that 'only judgment creditors and those who have a legal or equitable lien on the property,' or who have commenced attachment suits against the property, can maintain such suit.' " Jones v. Davis, Mo.Sup., 306 S.W.2d 479, 480. See also State ex rel. Brigance v. Smith, 345 Mo. 793, 135 S.W.2d 355; General American Life Insurance Company v. Leavenworth, 347 Mo. 876, 149 S.W.2d 360; Dalton v. Barron, 293 Mo. 36, 239 S.W. 97, 22 A.L.R. 187; 21 C.J.S. Creditors' Suits § 43; 14 Am.Jur., Creditors' Bills, § 14; Annotation, 23 L.R.A.,N.S., 10. The above cases indicate that if the amount of the indebtedness is judicially admitted, or if the debtor is not subject to being served by the ordinary process of law, the rule requiring that the claim be reduced to judgment is not strictly applied. See also Publicity Building Realty Corporation v. Thomann, 353 Mo. 493, 183 S.W.2d 69. Plaintiffs do not contend that this case is within any recognized exception mentioned in the cited cases, but they do contend that the general rule has been changed by Section 509.070 RSMo 1949, V.A.M.S. This statute provides that "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action." It is then specifically provided that a plaintiff may state a claim for money and a claim to set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money. This statute does modify the above rule to the extent that both claims may be joined in the same action, but it does not obviate the necessity that in those situations where the recognized exceptions do not apply, the plaintiff must, either in some previous action or in the same action, reduce his claim for money to judgment. Jones v. Davis, supra. Here the plaintiffs seek to interfere with the disposition of property by Mr. and Mrs. Fotie without ever establishing as a matter of law that they are actual and subsisting creditors. As stated in Jones v. Davis, "The basic reason for the aforementioned rule is that a court of equity can only interfere with the right of a debtor to dispose of his property at the instigation of a bona fide creditor, and it cannot be said with certainty that one is an actual and subsisting creditor until his alleged debt has been reduced to judgment or allowed as a claim against a deceased debtor's estate. It may well be that the alleged creditor will not be successful in obtaining a judgment against

the debtor. In that event, if he has been priorly permitted to maintain an action in equity to set aside an allegedly fraudulent deed [or other allegedly fraudulent transfers of property], the time of the court has been wasted and the grantor has been put to needless trouble and expense. It is also frequently said that the debtor is entitled to have the issue of indebtedness determined by a jury and that a court of equity is not the proper tribunal to determine the amount due upon a purely legal demand." 306 S.W. 2d at page 481.

■ We cannot agree with plaintiffs that by "voluntarily waiving [their] right to a personal judgment against Mrs. Fotie" they were, under the facts of this case, entitled to obtain the equitable relief sought without, at some stage of the trial, reducing their claim against Mrs. Fotie on the guaranty agreements to a personal judgment. But, plaintiffs have presented their evidence in support of their creditors' bill, and after losing in the trial court they have appealed and asked this court to review that phase of their case aside from the merits of their claim for a money judgment against Mrs. Fotie based on the guaranty agreements. If upon the record, plaintiffs would not be entitled to the equitable relief sought even if they were entitled to and had obtained a judgment against Mrs. Fotie, no useful purpose would be served in not disposing finally of this issue at this time. The money over which this controversy exists has now been tied up more than two years. Therefore, we shall review the case in the manner requested by plaintiffs, and then either affirm the judgment or dispose of this appeal according to the result of that review.

■ Plaintiffs contend that the trial court "erred in holding the proceeds of the sale of the homestead exempt from plaintiffs' claim." This was not the trial court's ruling. It held that plaintiffs were not entitled to the $1,256.76 being held in escrow because "the claim of the plaintiffs for the amount received from the sale of the homestead has been abandoned." An·equity action should be reviewed on appeal on the theory upon which it was brought *and tried* in the trial court, Kenner v. Aubuchon, Mo. Sup., 280 S.W.2d 820, 826, and we are admonished by Section 512.160 RSMo 1949, V.A.M.S., that "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." A trial court should not be convicted of error on appeal for failing to rule favorably to plaintiffs on an abandoned issue, and under the circumstances, the trial court certainly did not commit error when it ruled that plaintiffs were not entitled to this money because they had voluntarily abandoned their claim thereto.

Plaintiffs next contend that they are entitled to a judgment for at least the amount of the cash surrender value of the three life insurance policies in which certain of Mr. Fotie's minor children were named as beneficiaries. It is then stated that "we contend that plaintiffs are entitled to judgment for the full amounts paid on these policies under another point" of the brief. However, we do not find any such point in the brief. The other points which pertain to insurance refer only to the ordinary life policy which was obtained by converting the insurance under the group term policy.

■ Neither before nor after the changes of beneficiary in April 1955 was either Mrs. Fotie personally or Mr. Fotie's estate named as beneficiary in any of these policies. Both before and after the changes the ultimate beneficiaries were Mr. Fotie's minor children. Plaintiffs do not contend that the children owe them anything. The refusal of the trial court to hold that plaintiffs were entitled to all the proceeds of these policies certainly was not plain error which would authorize this court, in its discretion, to consider this contention on appeal. Supreme Court Rule 3.27, 42 V.A. M.S. Therefore, in the absence of a point in the brief, the contention is not before this court for review. Supreme Court

Rule 1.08; Scott v. Missouri Pacific Railroad Company, 333 Mo. 374, 62 S.W.2d 834; Wallace v. Brown, Mo.Sup., 165 S.W.2d 408; Wright v. Lewis, 323 Mo. 404, 19 S.W.2d 287.

Plaintiffs base their claim to an amount equal to the cash surrender value of the three policies on the obiter dictum statement in Industrial Loan & Investment Co. v. Missouri State Life Insurance Co., 222 Mo.App. 1228, 3 S.W.2d 1046, to the effect that when an insurance policy is attached by a creditor of the insured, the policy should be placed in the hands of a receiver as provided by Section 521.340 RS Mo 1949, V.A.M.S., and that the receiver should collect the amount due on the policy at the proper time and in the manner provided by the policy, as he would a note or other obligation. However, plaintiffs did not attempt to attach these policies or to proceed in the manner referred to in the cited case. But more important, there is no action pending against Mr. Fotie because he is deceased, and plaintiffs have voluntarily elected not to maintain this action against his estate. Therefore, by this action plaintiffs cannot be seeking to acquire any of the money in dispute on the basis that they are creditors of Mr. Fotie or of his estate. They necessarily are relying only on their claim that they are creditors of Mrs. Fotie. But, Mrs. Fotie personally had and now has no interest whatever in these policies of insurance. She is neither the insured nor the beneficiary. Therefore, on the issues on which this case was submitted to the trial court, it correctly held that plaintiffs were not entitled to a sum equal to the cash surrender value of these policies.

 Plaintiffs next contend that the designation by Mr. Fotie of his children as beneficiaries in the policy converted from the term policy was in fraud of creditors. But Mr. Fotie had no financial interest in the term policy which his creditors could look to for the satisfaction of his debts. "If the creditor cannot reach the property for his debt, then its sale or conveyance is of no concern to him for the obvious reason that he is not hurt by a conveyance which transfers nothing that could be subjected to the payment of his claim. Stam v. Smith, 183 Mo. 464, 469, 81 S.W. 1217." Maender v. Breck, Mo.App., 159 S.W.2d 310, 312; 37 C.J.S. Fraudulent Conveyances § 29. For this reason, and because plaintiffs abandoned their claim against Mr. Fotie's estate, plaintiffs must necessarily be contending that the change of beneficiary was in fraud of the creditors of Mrs. Fotie.

When Mr. Fotie converted the term policy, an entirely new policy was issued to him. We know of no rule that under such circumstances Mr. Fotie had to name as beneficiary in the new policy the same person who was named in the term policy. Mrs. Fotie had no right to remain as beneficiary if the term policy had not been converted. That policy expressly provided for unlimited authority in Mr. Fotie to change the beneficiary at any time, and when the right is reserved to the insured by the terms of the policy to change the beneficiary, such a change may be made, with certain exceptions not contended to exist in this case, without the beneficiary's knowledge or consent. Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459. Under the circumstances we have here, Mrs. Fotie, as beneficiary in the term policy, acquired no vested right in that policy or in the anticipated proceeds thereof upon the death of the insured. Morgan v. Penn Mut. Life Ins. Co., 8 Cir., 94 F.2d 129; 2 Appleman, Insurance Law and Practice, § 911. Mrs. Fotie had no financial interest in the term policy, prior to the death of the insured, to which her creditors had a legal right to look for the satisfaction of her debts. Therefore, in this action the creditors of Mrs. Fotie have no right to complain because Mr. Fotie elected to name his children, who are not debtors of plaintiffs, as the beneficiary of the new ordinary life policy instead of Mrs. Fotie. See Schillinger v. Boes, 85 Ky. 357, 3 S.W. 427, which is of particular interest because of the close similarity of the facts. That case involved the change of a certifi-

cate of a beneficial association in which the wife had no vested rights.

Plaintiffs principally rely on Navassa Guano Company v. Cockfield, 4 Cir., 253 F. 883, 6 A.L.R. 1168; La Borde v. Farmers' State Bank, 116 Neb. 33, 215 N.W. 559, and Jackson ·v. Tallmadge, 246 N.Y. 133, 158 N.E. 48. The first two cases are readily distinguishable because there the insurance was payable to the estate of the insured, and he purported to change the beneficiary to an individual after insolvency and while knowing death was imminent. Regardless of what one's responsibility may be under such circumstances to his own creditors, we know of no rule which requires an insured to maintain in effect a policy of insurance for the benefit of the creditors of a beneficiary who has no vested interest in the policy or as a beneficiary. In the third case, the insurance was payable to the insured's wife. While death of the insured was imminent, and while both the insured and his wife were insolvent, the wife mailed an assignment of the policy to her brother in New York. The wife's attorney advised her brother that she would see him in a few days and explain the purpose of the assignment. After the death of the insured in North Dakota three days after the assignment, the wife went to New York and told her brother that she was without means and that the proceeds of the policy must be kept beyond the reach of her creditors. A trust was then and there declared whereby the brother agreed to hold the proceeds in trust for the benefit of the wife. A New York creditor of the wife assailed the assignment as fraudulent. Judge Cardozo held that the assignment was not completed until the wife returned to New York after the death of the insured, and that the assignment was in fraud of creditors. Obviously, the facts of that case result in it not lending any support to plaintiffs' contention in this case.

We have carefully reviewed the facts and circumstances of this case, and the numerous contentions of plaintiffs, and we conclude that if the plaintiffs were entitled to

and had reduced to judgment their claim against Mrs. Fotie based on the guaranty agreements, they still would not be entitled to the equitable relief sought. Therefore, the result reached by the trial court was correct, and the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.