**The WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, a Corporation, Plaintiff,**

v.

**Joyce M. CASH, Defendant-Respondent,**

and

**Genevieve J. Cash, Defendant-Appellant.**

**No. 33612.**

St. Louis Court of Appeals, Missouri.

April 28, 1970.

Rehearing Denied May 28, 1970.

David L. Colson, Farmington, for defendant-appellant.

Peper, Martin, Jensen, Maichel & Hetlage, William A. Richter, St. Louis, for plaintiff.

Friedman & Fredericks, Clayton, for defendant-respondent.

DOERNER, Commissioner.

Faced with conflicting demands for the proceeds of an insurance policy issued by it on the life of its insured, The Western and Southern Life Insurance Company tendered into court the amount due, $8188.42, in an action of interpleader in which appellant and respondent were named as defendants. After a hearing the court sustained the interplea, allowed the plaintiff fees and expenses of $359.40, and discharged the insurer from any further liability to the rival claimants. Subsequently a trial was held before the court, which rendered judgment in favor of respondent, and appellant appealed.

Respondent, Joyce M. Cash, and the insured, Charles Eugene Cash, were married on July 23, 1960, and they, together with Joyce's three young children by a prior marriage, lived with Charles' mother, appellant Genevieve J. Cash, until Charles was killed in an automobile accident on February 19, 1965. During that entire period, according to respondent, appellant paid the rent, electric, gas, insurance, and the food bill up until the last year when Charles started to pay that. Shortly after the marriage, on September 20, 1960, one of the insured's agents named Arthur L. Reeves, called upon appellant to collect a premium on her policy of insurance, and a discussion ensued between Reeves, Charles, respondent and appellant regarding insurance on Charles and his family. As a result, two applications were prepared. By the first, titled "Application for Ordinary Insurance," executed by Charles, he applied to the Western and Southern Life Insurance Company for insurance on his life in the face amount of $4111 (subsequently corrected to $4115), and named the respondent as the beneficiary. The second application is titled "Application Supplementary Family Unit Term Insurance," and reads that "Application is hereby made for Family Unit Term Insurance to be provided by supplementary provisions or agreement attached to and made part of [] Policy No. _____ on the life of *Charles E. Cash* (hereinafter referred to as Proposed Insured)." In that part of the form under the heading "1A. Full names of Persons Proposed for Insurance" there was listed the name of respondent and those of her three children. The application was executed by respondent above the legend

"Signature of Wife," and by Charles above the words "Signature of Proposed Insured."

On October 5, 1960, the insured issued its policy numbered 214 52 25, naming Charles as both insured and as the owner of the policy, the respondent as beneficiary, stating the face amount as $4115, and showing under "Schedule of Premiums" the following (omitting those shown for annual, semiannual and quarterly since the evidence showed they were paid monthly):

"For the Life Insurance . . .$ 8.15
For the Accidental Death
  Benefit . . . . . . . .37
For the Family Unit Prot . . 1.48
Total for the Policy . . . . 10.00"

Included in the policy is a page titled "Family Unit Protector," in which the policy number is stated to be "214 52 25" the insured to be Charles Eugene Cash, the insured wife to be Joyce M. Cash, the expiry date 10–5–99, and the coverage as "Insured Wife $1500" and "Each Insured Child $750."

According to respondent's recollection she or Charles paid the premiums of $10 per month from September, 1960 until September, 1961, when she told Charles that they couldn't afford the insurance any longer and to drop it. The number of monthly premiums paid by Charles was disputed by appellant, who testified that after Charles had made four payments Charles came to her and asked her to keep up the policy until he got on his feet, and that thereafter she paid all of the premiums. In support of her testimony appellant produced and there was introduced as appellant's Exhibit 2, forty-three receipts for insurance policy payments. Pritchett, the Company's agent who had collected the last several payments, testified that appellant had paid the premiums. In October or November, 1964, appellant testified Charles asked her to have the beneficiary changed, and when she asked him why, he told her that he wanted it made over to her and to be the beneficiary, that she had done without things needed to hold the policy, and out things needed to hold the policy, and

that if anything happened to him he would know she would help his children any way she could. (There is testimony from respondent in the record that at the time of trial respondent had four children, which would indicate that a child was born of the marriage of Charles and respondent.)

On November 3, 1964, Charles executed a change of beneficiary form prepared by the insured's agent Pritchett, in which he changed the beneficiary on Policy 214 52 25 to appellant. The Insurance Company endorsed the receipt and filing of the change of beneficiary form on November 10, 1964. As previously stated, Charles was killed in an automobile accident on February 19, 1965, and this litigation over the proceeds of the insurance followed.

An examination of the policy in question clearly shows that it is composed of two parts. The first part is the limited life payment policy number 214 52 25 issued on the life of Charles in the face amount of $4115, which included an accidental death benefit equal to the face amount of the policy. The second part is the "Family Unit Protector," which has printed thereon: "Supplementary term agreement attached to and made part of the above described policy," that is, policy 214 52 25. By the terms of the Family Protector Unit supplementary insurance coverage was provided on the lives of respondent and her children. Throughout the contract the word "policy" is used in all references to the limited payment life policy issued on the life of Charles, while throughout the attached Family Unit Protector page the word "agreement" is used in all references to the coverage of respondent and her children. The controversy arose between the parties over the fact that in the limited payment life policy, under the caption "Ownership and Beneficiary Provisions," the following pertinent provisions appear:

"1. Ownership—During the Insured's lifetime every right, privilege, power, benefit and option conferred by the policy may be exercised, received and enjoyed by the Owner.

"The Insured shall be the Owner unless some other person is designated as the Owner in the policy.

\*    \*    \*    \*    \*    \*

"3. Beneficiary—Beneficiaries may be designated by name or in any other manner allowed by the Company, and shall be numbered by class to indicate their priority. \* \* \*

\*    \*    \*    \*    \*    \*

"Any beneficiary may be changed from time to time prior to surrender or maturity by filing a written request in form satisfactory to the Company. Such change will not be effective unless recorded by the Company at the Home Office but when so recorded it shall take effect as of the date the written request was signed, whether or the Insured is living at the time of such recording, subject, however, to any payment made by the Company prior to such recording."

On the front of the supplemental page titled "Family Unit Protector" the following appears:

"Benefit—The Company will, subject to the following provisions, pay the applicable Term Insurance Amount shown above in one sum to the beneficiary under this agreement upon receipt of due proof that:

(a) the death of the Insured Wife occurred prior to the expiry date, or

(b) the death of an Insured Child occurred prior to the earlier of the expiry date or such child's 21st birthday."

And on the back of that supplemental page is printed:

"Beneficiary—The beneficiary under this agreement shall be the Insured, if living; otherwise the Insured Wife. The beneficiary under this agreement may not be changed. If neither beneficiary is living at the death of any person insured under this agreement, payment will be made to the estate of such insured person."

■■■ Appellant contends that the trial court erred in finding the issues in favor of respondent because it misinterpreted the plain and unambiguous language of the insurance contract. We agree. An examination of the policy as a whole clearly and unmistakably shows that the first of the foregoing provisions regarding a change of beneficiary relate only to that part of the contract which was the limited payment life policy on the life of Charles, while the second provision concerning the beneficiary related only to the supplement named the Family Unit Protector. By the first of the foregoing provisions Charles, the insured and owner of the policy, expressly retained the right to change the beneficiary at any time. It has long been the law in this state that when the right is reserved to the insured by the terms of the policy to change the beneficiary, such a change may be made, with certain exceptions not contended to exist in this case, without the beneficiary's knowledge or consent. Johnson v. Fotie, Mo., 308 S.W.2d 662; Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459; Prudential Insurance Co. of America v. Newsom, Mo. App., 408 S.W.2d 161. In accordance with those provisions, Charles changed the beneficiary of that part of the contract which was named the limited payment life policy by executing his request therefor on the form supplied by the insurer and filing the same with the insurer at its home office, which recorded the change.

It is equally clear that the second quoted provision regarding the beneficiary, which forbids a change thereof, relates solely and only to the so-called Family Unit Protector. For on the first or front page of the Family Unit Protector there appears the following: "The Provisions and Conditions on the reverse side of this agreement are part of this agreement." And on the reverse side is printed the provision above quoted prohibiting the change of beneficiary. And note the language of that pro-

vision: "The beneficiary under this *agreement* may not be changed." (Emphasis added.) So construed, it is obvious that there is no conflict between the two provisions. Under the first, Charles expressly retained the right to change the beneficiary of that part of the insurance contract which was the limited payment life policy portion, while under the second provision no change could be made in the beneficiary of the Family Unit Protector portion.

Respondent points to another provision contained in the Family Unit Protector which reads:

"Policy Provisions—The provisions of the policy for Nonforfeiture Benefits, Accidental Death Benefit and Cash Surrender and Loan Benefits shall not apply to this agreement. All other provisions of the policy, except those which are inconsistent with the provisions of this agreement, shall apply to this agreement."

Respondent argues that since the beneficiary clause of the limited payment life policy portion of the contract is inconsistent with the beneficiary clause in the Family Unit Protector portion the latter should "control." We agree, but control what? Only "this agreement," that is, the Family Unit Protector portion. But the proceeds of insurance here in dispute did not arise under the "agreement." Rather, they arose under the "policy," the limited payment life policy portion of the contract, on the death of Charles, and accordingly the beneficiary clause relative to that portion is controlling.

For the reasons stated the judgment is reversed and the cause is remanded with directions to enter judgment in favor of appellant Genevieve J. Cash for the sum of $7829.02 held in the registry of the court.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment reversed and cause remanded with directions.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.